UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,  :

   -against-  :  MEMORANDUM OF LAW
      :
      19 Cr. 676 (PGG)

ALEXEI SAAB,  :
   Defendant,  :
--------------------------------------------------------x

## PRELIMINARY STATEMENT

Defendant Alexei Saab respectfully submits this memorandum of law in support of his motion to dismiss counts seven, eight, and nine in the indictment.

Specifically, Mr. Saab moves to dismiss the following:

1. Count Seven in the Indictment, which alleges that in or about March 2015, Mr. Saab and CC-1 jointly filed the Petition in which they falsely affirmed under penalty of perjury that their marriage "was not for the purpose of procuring an immigration benefit" in violation of 18 USC §1546(A) ("§1546(A)") and 2;

2. Count Eight in the Indictment, which alleges that in or about March 2015, Mr. Saab affirmed, and aided and abetted CC-1's affirmance, in the Petition, under penalty of perjury, that their marriage "was not for the purpose of procuring an immigration benefit" in violation of 18 USC §1015(a) and 2;

3. Count Nine in the Indictment, which alleges that in or about March 2015, Mr. Saab, in a matter within the jurisdiction of the executive branch of the Government of the United States, affirmed, and aided and abetted CC-1's affirmance, under penalty of perjury, the false statement contained in the Petition in violation of 18 USC §1001 ("§1001") and 2.

# ARGUMENT

## I. COUNT SEVEN OR COUNT NINE SHOULD BE DISMISSED BECAUSE THEY ARE MULTIPLICITOUS

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko,* 169 F.3d 140, 145 (2d Cir.1999). Multiplicitous indictments raise "…constitutional concerns, as the Double Jeopardy Clause protects a defendant 'against cumulative punishments for convictions on the same offense.'" *United States v. Yuan Li*, No. 18-CR-302 (BMC), 2020 WL 6393038, at *8 (EDNY Nov. 2, 2020), citing *Ohio v. Johnson*, 467 US 493, 500 (1984) In order for the Court to prohibit the presentation of a multiplicitous indictment to the jury, the Court should dismiss the multiplicitous counts in this indictment. "…[M]ultiple punishments are the constitutional harm to be avoided by the prohibition against multiplicitous indictments…" *United States v. Cacace*, 796 F.3d 176, 186 (2d Cir. 2015) "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 US 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187 (1977). Thus, convictions on multiplicitous counts are a violation of the Fifth Amendment Double Jeopardy Clause. *Id.* To avoid waiving his right to challenge the multiplicitous charges in this indictment, Mr. Saab rightfully raises the issue of multiplicity in his pre-trial motions. Fed. R. Crim. P. 12

    A. The Blockburger test does not apply in this case because the elements of Count Seven are subsumed within the elements of Count Nine, making them multiplicitous.

In order to determine whether counts are multiplicitous, the Court must first, determine whether each count "…requires proof of a fact which the other does not." *Blockburger v. United States*, 284 US 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932). However, "…Blockburger is not satisfied where the elements of one charged offense are subsumed within another charged offense." *United States v. Butler*, 351 F. Supp. 2d 121, 128 (SDNY 2004), citing *United States v. Ben Zvi*, 168 F.3d 49, 57 (2d Cir.1999) In the Butler case, defendant Jones was alleged to have made three perjurious statements on three different dates at three different times while testifying before a grand jury in violation of 18 USC §1623. Citing those same three perjurious statements, the Government alleged that defendant Jones made three false statements in a matter within the jurisdiction of the judicial branch of the federal government in violation of 18 USC §1001. Defendant Jones moved to dismiss the latter three counts as multiplicitous. The Butler Court compared the elements of 18 USC §1623 as against the elements of 18 USC §1001 in conducting the Blockburger test. In its analysis, the Butler Court noted that:

"…§1623 requires an oath, which §1001 does not, while §1001 requires that the statement be "within the jurisdiction of the executive, legislative, or *128 judicial branch of the Government of the United States," which is not a requirement of §1623. But the latter half of this formula is questionable. Section 1623 prohibits making "any false material declaration" "in any proceeding before or ancillary to any court or grand jury of the United States." Thus, if statements before a grand jury are to be considered statements within the jurisdiction of the judicial branch within the meaning of §1001, then any statement that violates §1623 must necessarily be one "within the jurisdiction of the ... judicial branch of the Government of the United States." 18 USC §1001. *United States v. Butler*, 351 F. Supp. 2d 121, 127–28 (SDNY 2004)

The Butler court further concluded that "…[w]hile a false statement that violates §1001 will not always be a violation of §1623 because the latter only applies to sworn testimony, a violation of §1623 will always necessarily violate §1001 because such false testimony will always constitute

a "materially false ... statement" "within the jurisdiction of the ... judicial branch" of government—assuming that grand jury testimony is covered by §1001. *United States v. Butler*, 351 F. Supp. 2d 121, 128 (S.D.N.Y. 2004). After this thorough analysis, the Butler court was correct in concluding that 18 USC §1623 was subsumed within 18 USC §1001, making the counts multiplicitous.

The Butler court first determined that the alleged perjurious statements in violation of §1623 were the same false statements alleged in violation of §1001. In Mr. Saab's case, the alleged false statement charged in Count Seven is the same alleged false statement charged in Count Nine. The Government only alleges that one petition was filed in March of 2015. Saab Indictment. In Count Seven, the Government alleges that in or about March 2015, in an immigration document they have called "the Petition," Mr. Saab "falsely affirmed under penalty of perjury that their marriage 'was not for the purpose of procuring an immigration benefit.'" Saab Indictment, p. 10   In Count Nine, the Government alleges that "[i]n or about March 2015… SAAB affirmed, and aided and abetted CC-l's affirmance, under penalty of perjury, the false statement contained in the Petition". Id. at pg. 12

In reaching its conclusion, the Butler court next analyzed the elements of the alleged multiplicitous charges to determine whether each charge required proof of a fact that the other did not.

With respect to the Saab Indictment, Count Seven, 18 USC § 1546(A) states:

"Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other documents which contains any such false statement or which fails to contain any reasonable basis in law or fact –
      Shall be fined under this title or imprisoned not more than 25 years (if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title)),

20 years (if the offense was committed to facilitate a drug trafficking crime (as defined in section 929(a) of this title)), 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both." 18 USCA § 1546 (West)

With respect to the Saab Indictment, Count Nine, 18 USC § 1001 states:

"[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry -
Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years." 18 USCA § 1001 (West)

In the instant case, the breakdown of the elements of each of the multiplicitous charges is as follows:

| §1546(A) Count Seven | §1001 Count Nine |
|---|---|
| Element One: Defendant made a **false statement under oath** *or* **presented a document containing a false statement** | Element One: That the statement was **false**, fictitious, or fraudulent |
| Element Two: That the Statement was **made in a document required by the United States immigration laws or regulations** | Element Two: That the statement was **made in a matter within the jurisdiction of the judicial, legislative, or executive branch:** *Immigration and Naturalization Service and United States Citizenship & Immigration Services are part of the executive branch of Government* |
| Element Three: That the **statement was false as to a material fact**; that the statement described in element one was related to a fact that was material | Element Three: Defendant made a **material statement** or representation for purposes of this proceeding |
| Element Four: That the defendant **knew** that the statement was false when made | Element Four: That the statement was made **knowing** that it was false |

Analogous to the Butler case, §1546(A) requires an oath, which §1001 does not, while §1001 requires that the statement is within the jurisdiction of the judicial, legislative, or executive branch of the Government of the United States, which is not a requirement of §1546(A). It has been well established that all immigration issues are matters within the jurisdiction of the executive branch. *Sharkey v. Ganter*, No. 05 CIV. 5577 (PAC), 2006 WL 177156, at *4 (SDNY Jan. 24, 2006), rev'd and remanded sub nom. *Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008), cf. INS v. Aguirre-Aguirre, 526 US 415, 425 (1999) (explaining that the executive branch has plenary power over immigration issues) Similarly situated with §1623 in Butler, §1546(A) prohibits the making of "a false statement of a material fact under oath or" the presenting of "a document containing a false statement of a material fact" "made in a document required by the United States immigration laws or regulations." 18 USC §1546(A) Statements made in a document required by the United States immigration laws and regulations are statements within the jurisdiction of the executive branch of the United States Government within the meaning of §1001. A violation of §1546(A) will always violate §1001 because such a false statement will always constitute a materially false statement made in a document required by the United States immigration laws or regulations. Thus, such false statements will always be a matter within the jurisdiction of the executive branch of government. Using the same analysis and reasoning as the court in Butler, it is clear that in our instant case, it is apparent that Count Seven, §1546(A) is subsumed within Count Nine, §1001, making them multiplicitous counts.

> B. As a remedy, multiplicitous counts in the indictment should be dismissed to avoid the constitutional harm of multiple punishments.

The Court must now determine the appropriate remedy for such multiplicitous counts. Multiplicitous counts should be dismissed for multiplicity because charging multiple counts for

the same offense "may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Gupta*, No. 11 CR 907 JSR, 2012 WL 1066804, at *2 (SDNY Mar. 27, 2012), citing *United States v. Reed*, 639 F.2d 896, 904 (2d Cir.1981). As a result of the Butler court's finding of multiplicity with respect to the latter three counts against defendant Jones, the Butler court's remedy was to dismiss the multiplicitous charges. *United States v. Butler*, 351 F. Supp. 2d 121, 132 (S.D.N.Y. 2004). The court in United States v. Seda "affirmed an order requiring the government to elect between the multiplicitous counts prior to trial. It nevertheless acknowledged that an election prior to submission of the case to the jury or a lesser included offense instruction might be appropriate in other circumstances, albeit without indicating what such circumstances might be." *United States v. Rogers,* 898 F. Supp. 219, 223 (SDNY 1995), citing *United States v. Seda*, 978 F.2d 779, 782 (2d Cir. 1992) The Rogers court further concluded that "…proof that will be offered will not be affected, much less materially so, by a requirement of a pretrial election**.**" *Id.*

II. **COUNT EIGHT SHOULD BE DISMISSED FOR FAILURE TO STATE A CRIME**

Defendant moves to dismiss Count Eight of the indictment ("Naturalization Fraud) as failing to state a crime under 18 USCA Sections 1015(a) and 2. Counts Seven, Eight and Nine are supported by identical allegations. In Count Eight it is alleged that Saab in or about March 2015, "knowingly made, and aided and abetted the making of, a false statement under oath, in a case, proceeding, and matter relating to, under, and by virtue of a law of the United States relating to naturalization, citizenship, and registry of aliens, to wit, Saab affirmed, and aided and abetted CC-1's affirmance, in the Petition, under penalty of perjury, that their marriage "was not for the purpose of procuring an immigration benefit."

The indictment further alleges the following: "on or about July 2012, Saab married a co-conspirator not named herein ("CC-1"), in Manhattan, New York, so that CC-1 could obtain citizenship benefits in the United States in that in or about March 2015, Saab and CC-1 filed a joint petition (the "Petition") seeking to remove conditions on CC-1's residence. In the Petition, both Saab and CC-1 falsely affirmed under penalty of perjury that their marriage "was not for the purpose of procuring an immigration benefit." (Indictment, Para. 15).

The factual allegations fail to support the elements of the stature. The key facts alleged in support of this count are 1) in 2015, parties filed a joint petition seeking to remove conditions on CC-1's residence and 2) in the petition, both Saab and CC-1 falsely affirmed under penalty of perjury that their marriage "was not for the purpose of procuring an immigration benefit." The presumptive CC-1 is Nadia Haddani ("Haddani"), Saab's wife, whose petition is referenced in the allegations. These facts were derived from Haddani and Saab's joint Form I-751 Petition to Remove Conditions on Lawful Residency ("I-751 Petition") filed in 2015, which was not a case, proceeding, and matter relating to naturalization, citizenship, and registry of aliens.

Section 1015(a), last amended on October 30, 2000, reads as follows:

> "Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens… Shall be fined under this title or imprisoned not more than five years, or both."

The key elements of the statute are: 1) knowingly make any statement, 2) under oath, and 3) in any case, proceeding or matter relating to… naturalization, citizenship, or registry of aliens. The I-751 petition to remove conditions from a lawful permanent residency is part of an adjustment of status process, which is a separate and distinct legal process, and not one relating

to naturalization, citizenship, or to the registry of aliens within the meaning of the terms in 18 USCA §1015(a). Therefore, the facts fail to support the third element under the statute.

Lawful Permanent Residency, Naturalization, Citizenship, and Registry are each governed by a separate statute and regulations under the Immigration and Naturalization Act ("INA").  No known decision interprets adjustment of status process as relating to the naturalization, citizenship, or registry under 18 USC.A §1015(a).

The I-751 Petition, which Haddani and Saab jointly initiated, is part of the lawful permanent residency process, commonly referred to as an Adjustment of Status, and not at all related to the naturalization, citizenship, or registry processes.  Certain aliens in the United States can obtain permanent resident status without leaving the United States by filing an application for Adjustment of Status. See, 8 USC 1255, INA §245.  If the application is to be premised on a visa petition, such as the petition Saab filed for Haddani here, and if an immigrant visa is currently available within the quota, or the alien is not subject to the quota as was the case here, and a visa petition has not previously been filed, it may be filed simultaneously with the application for adjustment of status.  Id.  Pursuant to this provision, on March 15, 2013, Haddani became a conditional lawful permanent resident based on the relative petition filed by Saab.  See INA §245; 8 USCA §1255.

Haddani's residency was conditional because the couple was married less than two years at the time Haddani's application for adjustment of status was granted and was due to expire in March of 2015. *Id.*  In March 2015, Haddani and Saab filed their Joint Petition to Remove Conditions on Haddani's residency, I-751. See, Form I-751.  The USCIS never adjudicated this petition because of an ongoing investigation, and, as a result, Haddani's lawful resident status remained conditional.

Thus, Haddani and Saab's I-751 Petition was not a process related to naturalization but one related to lawful permanent residency. Therefore, the heading "Naturalization Fraud" in Count Eight of the indictment is wrong and misleading. The Government is trying to fit a square peg in a round hole. The process of naturalization, as distinct from the adjustment of status process, is governed by a separate statute and regulations, and a request for naturalization benefits would have to be filed on Form N-400, not Form I-751. See, 8 USC 1430 (a). To apply for naturalization, Haddani would have had to file a Form N-400 Application for Naturalization ("N-400") if and when she became eligible for such benefit, and she was ineligible. Under that statute, if Haddani remained married to Saab, and her I-751 Joint Petition was favorably adjudicated, and she met other statutory requirements, she would be eligible to file her N-400 Application for Naturalization three years after becoming a conditional lawful permanent resident, on or about March 15, 2018. Haddani never qualified for such immigration benefit, for one, because the USCIS did not adjudicate the couple's joint I-751 Petition due to an ongoing investigation. See, Exhibit _ (docs showing I-751 pending).

A person born abroad can either become a naturalized US citizen or derive her citizenship from her US citizen parent. Under 8 USC 1101 (23), the term "naturalization" means the conferring of nationality of a state upon a person after birth, by any means whatsoever. The constitutional meaning of the term "naturalization" might include even derivation at birth, as some courts have described every type of citizenship other than birth inside the US as naturalization, though this is a contested and complicated matter. Compare <u>United States v. Wong Kim Ark</u>, 169 US 649, 702-03 (1898) ("The fourteenth amendment of the constitution, in the declaration that 'all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside,'

contemplates two sources of citizenship, and two only,-birth and naturalization"); with Schneider v. Rusk, 377 US 163, 168-69 (1964) (Unlike "naturalization," "acquisition of citizenship by being born abroad of an American parent" is "not covered by the Fourteenth Amendment" but is instead "left to proper Congressional action"); see also, Miller v. Albright, 523 US 420, 480 (1998) (Breyer, J. Dissenting).

The INA imposes substantive requirements that a person must satisfy in order to become a naturalized citizen. In addition to satisfying these requirements, the applicant must prove that he or she is not ineligible on various grounds, such as desertion, lack of good moral character, membership in totalitarian organizations, and membership in the Communist Party. Many of these bars developed because the general naturalization requirements did not prevent the naturalization of certain classes of people Congress intended to keep from naturalizing. An applicant must fulfill those requirements.

In the overwhelming number of cases, prior admission as a lawful permanent resident is a prerequisite for naturalization. 8 USCA §§ 1429 and 1427(a). The required period of permanent residence varies depending on the statutory basis for naturalization, but normally at least some period of lawful permanent residence is required. Three considerations are included within this concept: was the person granted permanent residence in the United States, was the permanent residence lawful and is the residence continuing.

The main difference between acquisition of citizenship and naturalization is that the former types of laws vest citizenship automatically, and the latter involves an application process to obtain citizenship. Unlike the statutes dealing with the acquisition of citizenship, naturalization statutes require a government authority to determine that the person is eligible and

has complied with all the requirements of naturalization before the person is admitted to citizenship.

It is evident that Haddani's and Saab's I-751 is not related to citizenship or naturalization. They were going through the process of completing Haddani's adjustment of status, and Haddani never became eligible for naturalization or citizenship. By comparison, Saab filed his own naturalization application, Form N-400, in 2005, and became a naturalized citizen on August 26, 2008, but any statements he made in his N-400 application are not used in and cannot be used to prosecute him under 18 USCA Sec. 1015(a).  Mr. Saab's application was filed more than five years before this prosecution was begun and, as such, is outside of the five-year statute of limitations under 18 USCA §3282.  A prosecution under 18 USCA §1015 for making false statements is governed by 18 USCA §3282, the general five-year statute of limitations. Therefore, the representations he made in furtherance of that application cannot be used to prosecute him under this section.

Further, Haddani and Saab's jointly filed Form I-751 is not an application related to a registry under 18 USCA Sec. 1015(a).  Registry law provides for obtaining permanent resident status for persons who have been physically present in the United States for certain periods of time as specified in the statute. See, 8 USCA §1249. Registry results in permanent resident status to a person who can prove that she entered the United States prior to January 1, 1972, has had a residence in the United States continuously since such entry, is a person of good moral character, and is not ineligible to citizenship. 8 USCA §1259. The statute applies to persons for whom there is no record of lawful entry. The application for adjustment of status (Form I-485) and biographic form (Form G-325A) must be submitted together with documentary evidence establishing continuous residency in the United States prior to January 1, 1972.  Haddani and

Saab's process falls under 8 USCA §1255 and not 8 USCA §1249 because she came to the United States after 1972.

Based on the foregoing, count 8 of the indictment ("Naturalization Fraud") must be dismissed as factually insufficient under 18 USCA Sections 1015(a) and 2.

## Conclusion

For the foregoing reasons, the defendant respectfully requests this Court to enter an Order granting the relief sought herein. Specifically, it is respectfully requested that a pre-trial hearing be ordered on this issue and granting such other and further relief as this Court may deem to be just and reasonable.

Dated: New York, New York
February 22, 2021

Respectfully submitted,

/s/ Marlon G. Kirton
Marlon G. Kirton
KIRTON LAW FIRM
Attorney for Defendant
ALEXEI SAAB
175 Fulton Avenue, Suite 305
Hempstead, New York 11550
(516) 833-5617 ph
(516) 833-5620 fax
kirtonlawfirm@gmail.com

/s/Alexandra V. Tseitlin
Alexandra V. Tseitlin
Tseitlin Law Firm PC
Associate Counsel for Alexei Saab
345 7th Avenue, 21st Floor
New York, New York 10001
917-748-4713
tseitlinlaw@gmail.com

/s/Esere J. Onaodowan
Esere J. Onaodowan, Esq.
Law Offices of Onaodowan & Delince
Associate Counsel for Alexei Saab
116 West 23rd Street, 5th Floor
New York, NY 10011
718-427-3139
eonaodowan@eocdlaw.com