```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,         :

    -against-                     :         MEMORANDUM OF LAW
                                  :
                                            19 Cr. 676 (PGG)
ALEXEI SAAB,                      :
                Defendant,        :
------------------------------------------------------x
```

## PRELIMINARY STATEMENT

Defendant Alexei Saab respectfully submits this memorandum of law supporting his motion to controvert a search warrant.

## STATEMENT OF FACTS

1. Alexei Saab is the Defendant in the above-captioned matter. Mr. Saab is 43 years old. He was born in Yaroun, Lebanon. In November of 2000, he became a lawful permanent resident of the United States and moved to the United States.

2. Mr. Saab has lived and lawfully worked in the United States from the time he entered until his arrest on July 9, 2019. Before his arrest on July 9, 2019, he resided at 60 Elm Street, Morristown, New Jersey 07960.

3. On March 14, 2019, Mr. Saab was approached by Special Agent Anthony Cipriano and Task Force Officer Frank Miceli in the parking lot of his building at 60 Elm Street, Morristown, New Jersey 07960. They introduced themselves and advised Mr. Saab of their professional identities. They told Mr. Saab that they were not there to talk about the marriage; they wanted to speak to him about Hezbollah.

1

The agents took Mr. Saab across the street to an office building at 62 Elm Street, 3rd Floor, Morristown, NJ 07960 to interrogate him. The interrogation lasted more than six (6) hours. Absent *Miranda*[1] warnings, Mr. Saab, answered all the agents' questions regarding Hezbollah, military training, and international travels since coming to the United States in 2000. During the March 14, 2019, interview, the agents obtained Mr. Saab's various email addresses, passwords, and social media accounts.

4. Between March 2019 and July 2019, the agents interrogated Mr. Saab <u>ten</u> additional times without an attorney. For the duration of the ten subsequent interrogations, without the reading of his *Miranda* warnings, Mr. Saab answered questions, drew diagrams, identified coordinates on google maps, identified photos of other people, and provided his various email addresses, passwords, and social media accounts at the agents' request.

5. During the March 21, 2019, interrogation, the agents asked detailed questions about photos and videos and other digital media that Mr. Saab may have taken or possessed.[2]

6. During the March 28, 2019, interrogation of Mr. Saab, the agents learned of the alleged attempted murder of a person they have labeled as an "Israeli spy."[3]

7. On April 3, 2019, Magistrate Robert Lehrburger signed a search warrant authorizing the search of Mr. Saab's electronic devices.[4]

8. The Affidavit before Judge Lehrburger was submitted by FBI Special Agent Cipriano.[5]

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)
[2] FD 302 – March 21, 2019, Interview of Alexei Saab by Anthony J Cipriano and Miceli Frank Gaspare, pg.9
[3] FD 302 – March 28, 2019, Interview of Alexei Saab by Anthony J Cipriano and Miceli Frank Gaspare, pg.3
[4] Exhibit A, page 1.
[5] The Affidavit did not declare that Hezbollah terminated its relationship and provided him with no tasks after the Spring of 2005.

2

9. By July 8, 2019, the Government drafted and filed the complaint on ECF.[6] On July 9, 2019, the agents interrogated Mr. Saab for the <u>twelfth</u> time without an attorney at 26 Federal Plaza in New York, New York. This time, he was given an FD-395 Advice of Rights form. He was finally read his Miranda rights. After the interrogation, the agents arrested Mr. Saab and charged him with the following:

   a. Conspiracy to Provide Material Support to Hizballah
   b. Provision of Material Support to Hizballah
   c. Conspiracy to Receive Military-Type Training from Hizballah
   d. Receipt of Military-Type Training from Hizballah
   e. Unlawful Procurement of Citizenship or Naturalization to Facilitate an Act of International Terrorism
   f. Marriage Fraud Conspiracy
   g. Citizenship Application Fraud
   h. Naturalization Fraud
   i. False Statements

10. After indictment and arraignment, Defense Counsel immediately began conversations with the Government concerning a possible disposition in this matter. Between November 2019 and December 2019, the Government continued to provide Rule 16 discovery while talks of possible disposition continued.

11. Shortly before the December 19, 2019, status conference, the parties met at the United States Attorney's Office to discuss proposed motions schedules and yet again continue the conversation about a possible plea agreement.

---

[6] Saab Complaint, Document #1

12. At the December 19, 2019, status conference, as the Court and the parties attempted to set an appropriate motion and trial schedule; the Court inquired about the nature and volume of the discovery, and the following colloquy took place:

MR. KIRTON: Well, your Honor, I may have a solution to this situation. I don't know if the Government is open to it. If you look at the complaint, my client was stopped at the JFK airport by Homeland Security in 2005. And if you look at some of the statements attributed to my client, both (in) the complaint in the 302's, there was no involvement or connection with Hezbollah well, between Hezbollah and my client after he was stopped at the airport in 2005 at JFK. So, if the Government has proof in the discovery that my client was communicating with and involved with Hezbollah after the 2005 airport incident, they could point that out to us because I'm sure that's relevant to them proving Counts One and Two...**But in terms of what's relevant for our purposes, it's what, if any, involvement our client had with the group after that incident**.[7]

THE COURT: Mr. Krouse, you wish to respond?

MR. KROUSE: Yes, your Honor. I will say that there are items in the discovery that, from the Government's perspective, would indicate involvement by the Defendant in continued activities for Hezbollah after that date. It's largely items of like photographs and videos, some of which are outlined in the complaint which post-date that stop at JFK. The other thing I would say is that, from the Government's perspective, even if it happened before—if everything was pre-2005, this charge would still stand as is. So, while I understand Mr. Kirton's point that that would be particularly relevant to him—and I will, along with my co-counsel, try to point defense counsel in the right direction—**I would say the short answer is that we do think there is evidence in the discovery that will post date the 2005 stop at JFK.**[8]

13. On February 8, 2021, the parties had a telephone conference in what Defense Counsel believed to be the final stages of plea negotiations. After promising discussions and an understanding that a plea offer letter would soon follow, the Government told Defense Counsel that they would be making a disclosure shortly to Defense Counsel in the form of a letter. There were no details or further discussions about what the disclosure would

---

[7] Tr. 12/19/19, pages 5-6
[8] Tr. 12/19/19, pages 6-7

4

be. In fact, upon inquiry, the Government stated that Defense Counsel would be "underwhelmed" by the disclosure.

14. February 8, 2021, Defense Counsel received the anticipated disclosure letter from the Government, in which the Government disclosed the following:

> **"The Government writes to disclose that the Government does not dispute that Hizballah terminated its relationship with the defendant after Spring 2005 and no longer provided the defendant with any assignments, tasking, or training after Spring 2005."[9]**

15. This was the first time that the Government conveyed their belief that Mr. Saab did not have any relationship with Hizballah post Spring 2005. The Government had never expressed that to Defense Counsel before.

16. Defense counsel requested and was granted an opportunity to address the Government's February 8, 2021, disclosure.

17. The defense motion argued, inter alia, that the Government should disclose the date at which it became aware of the contents of the disclosure or that Defense counsel should be granted security clearance to determine the same.

18. The Court held an oral argument on all of the pending motions on July 15, 2021.[10]

19. During oral argument, Defense counsel argued that the absence of the Hizballah termination information from Agent Cipriano's Affidavit was a material omission and that the April 3rd warrant should be the subject of a *Franks* hearing.

20. The instant motion provides the legal framework for that argument.

---

[9] Government's 2/8/2021 Letter to Defense Counsel
[10] Transcript pending.

5

## ARGUMENT

### I. THE WARRANT AFFIDAVIT INTENTIONALLY OMITTED MATERIAL INFORMATION TO MISLEAD THE MAGISTRATE JUDGE

"To overcome the presumption of validity afforded to warrants and be entitled to a *Franks* hearing, 'a defendant must make a substantial preliminary showing that (1) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words 'the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth'; and (2) those misrepresentations or omissions were material, or 'necessary to the issuing judge's probable cause finding.'"[11] A defendant makes a substantial preliminary showing if he or she presents "credible and probative evidence" that the misstatement or omission "was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.' "[12] "A false statement or omission is material where it is 'necessary to the [issuing] judge's probable cause finding.'"[13] "Reckless disregard for the truth may be established by showing 'that an affiant made 'statements which failed to take account of the facts as he knew them, or which he seriously doubted were true.''"[14] "*Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate."[15]

---

[11] *United States v. Nejad*, No. 18-CR-224 (AJN), 2020 WL 429422, at *4 (S.D.N.Y. Jan. 28, 2020) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013)).
[12] *United States v. Hester*, No. S1 19-CR-324 (NSR), 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020) (quoting *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013)
[13] *United States v. Hester*, No. S1 19-CR-324 (NSR), 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020) (quoting *United States v. Martin*, 426 F.3d 68, 73 (2d Cir. 2005))
[14] *United States v. Hester*, No. S1 19-CR-324 (NSR), 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020) (quoting *United States v. Nejad*, No. 18-cr-224 (AJN), 2020 WL 429422, at *5 (S.D.N.Y. Jan. 28, 2020) (internal citations omitted)
[15] *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003) (quoting *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir.1990)

In our instant case, on April 3, 2019, the Government submitted a warrant application to Magistrate Judge Robert Lehrburger requesting a warrant to search seized devices belonging to Mr. Saab.[16] Attached to that warrant application was an affidavit by Special Agent Anthony Cipriano ("The Affidavit") in support of the search warrant.[17] Magistrate Judge Robert Lehrberger, finding probable cause existed, signed and issued the warrant.[18] The Affidavit, on its face, was misleading because it omitted a material fact necessary to the finding of probable cause.

    A. <u>The Omitted Information Was Material Because It Was Critical to The Judge's Finding of Probable Cause</u>

"As it relates to omissions, while an affiant need not provide 'every fact that arguably cuts against the existence of probable cause,' he or she must not 'omit circumstances that are critical to its evaluation.'"[19] "Recklessness may be inferred in such a situation, although such an inference is not automatically drawn."[20] On February 8, 2021, the Government emailed a letter ("Disclosure Letter") to Defense Counsel stating the following:

"Counsel:

The Government writes to disclose that the Government does not dispute that Hizballah terminated its relationship with the Defendant after Spring 2005, and no longer provided the Defendant with any assignments, tasking, or training after Spring 2005.

---

[16] 19 MAG 3289 Search Warrant Application and Affidavit
[17] Id.
[18] Id.
[19] *United States v. Hester*, No. S1 19-CR-324 (NSR), 2020 WL 3483702, at *19 (S.D.N.Y. June 26, 2020) (quoting *United States v. Levin*, No. 15 Cr. 101(KBF), 2015 WL 5602876, at *3 (S.D.N.Y. Sept. 23, 2015) (internal citations and quotations omitted)
[20] *Id* (quoting *Rajaratnam*, 719 F.3d at 154)

7

The undersigned are available if you have any questions."[21]

While the Government knew that Mr. Saab had no relationship with Hizballah and was not tasked by Hizballah after Spring 2005, none of the information in this letter was included in The Affidavit to the Magistrate Court dated April 3, 2019. With the support of Agent Cipriano's Affidavit, the Government asked the Court to issue the search warrant alleging that Mr. Saab's devices contained "…fruits, and instrumentalities of violations of: (i) Title 18, United States Code, Section 2339B (providing and conspiracy to provide material support or resources to designated foreign terrorist organizations); (ii) Title 18, United States Code, Sections 2339D and 371 (receipt of, and conspiracy to receive, military-type training from designated foreign terrorist organizations); and (iii) Title 18, United States Code, Section 924 (firearms offenses related to crimes of violence) (collectively, the "Material Support Offenses")"[22]

This omitted information is material because it speaks directly to whether it is reasonably likely that the search of Mr. Saab's devices will reveal evidence of the Material Support Offenses and his current involvement with Hizballah. "To determine if misrepresentations or omissions are material, a court corrects the errors and then resolves de novo whether the hypothetical corrected affidavit still establishes probable cause."[23] Moreover, the information in the Disclosure Letter specifically stated that as of Spring 2005, including and beyond the date of The Affidavit, Mr. Saab was not involved with Hizballah. This information is about circumstances that are critical to the Magistrate Judge's evaluation of whether probable cause existed as it related to the search of Mr. Saab's electronic devices. From the Disclosure Letter, it was clear

---

[21] Government Feb. 8, 2021, Disclosure Letter
[22] Agent Cipriano Affidavit, ¶5
[23] *United States v. Nejad*, 436 F. Supp. 3d 707, 722 (S.D.N.Y. 2020) citing *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013); see also *Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017)

8

that at the time that The Affidavit was drafted, the Government knew that Mr. Saab had already been terminated from Hizballah fourteen years prior to the drafting of The Affidavit.[24] This information was omitted from The Affidavit and intentionally kept from the Magistrate Judge's consideration of probable cause. The very existence of the Disclosure Letter is "…credible and probative evidence…"[25] that the omission was designed to mislead the Magistrate Judge. The information omitted from The Affidavit is material; therefore, the remaining information in The Affidavit was misleading. As a result, a *Franks* hearing is required.

## II. THE AFFIDAVIT IS MISLEADING BECAUSE A CORRECTED AFFIDAVIT WOULD NOT HAVE SUPPORTED A FINDING OF PROBABLE CAUSE

The Supreme Court has found that "…probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts,"[26] and has endorsed a "totality-of-the-circumstances approach"[27] when evaluating probable cause. In *United States v. Lahey*, the Court granted suppression for Defendant Tarrats, finding that "[w]hile the omission of each individual fact may not necessarily lead to the conclusion that [the affiant] acted [intentionally or] with reckless disregard for the truth, the cumulative effect of all of the omissions was to eliminate nearly every indicator detracting from [probable cause]."[28] There was nothing left to put the [Magistrate Judge] on notice of the omitted facts.[29] By omitting all of the information in the Disclosure Letter, the effect was the elimination of every indicator detracting from probable cause in Agent Cipriano's Affidavit. Nothing that was left in The Affidavit put the Magistrate Judge in this case on notice of any of the omitted facts. Thus, correcting The Affidavit by adding

---

[24] Government Feb. 8, 2021, Disclosure Letter
[25] *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003)
[26] *Illinois v. Gates,* 462 U.S. 213, 232, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); see also *United States v. Falso*, 544 F.3d 110, 117 (2d Cir.2008); see also *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013)
[27] *Id*.
[28] *United States v. Lahey*, 967 F. Supp. 2d 698, 723 (S.D.N.Y. 2013); quoting *Simmons,* 771 F.Supp.2d at 918
[29] *Id.*

the omitted information negates the probable cause that the Magistrate Judge was misled to find in The Affidavit. "Omissions from a warrant affidavit 'are not material unless they cast doubt on probable cause. The omitted information and the information in the Affidavit must be considered as a whole in determining if probable cause continues to exist.'"[30] "[F]or an omission to serve as the basis for a hearing under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause.]."[31]

### III. THIS COURT SHOULD GRANT DEFENSE REQUEST FOR A *FRANKS* HEARING.

In *Franks*, the U.S. Supreme Court decided the question as to whether a criminal defendant may challenge the truthfulness of a factual statement made in an affidavit supporting a warrant.[32] The Court held that Fourth Amendment grants the defendant that right so long as he makes a substantial showing that the affidavit contains knowingly false statements or statements made in reckless disregard for the truth.[33] If the false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.[34] The Court extended the Exclusionary Rule …"to suppress evidence from the States's case where a Fourth Amendment violation has been substantial and deliberate."[35]

The defense burden is one of production not persuasion. In this case at bar, the defense submitted the Government's February 8th disclosure, the Government's statement in open court and the sworn affidavit in support of the request for a *Franks* hearing. The information relied on

---

[30] *United States v. Mandell*, 710 F. Supp. 2d 368, 374 (S.D.N.Y. 2010); citing *United States v. Marin–Buitrago*, 734 F.2d 889, 895 (2d Cir.1984).
[31] *Id*.
[32] *Franks v. Delaware*, 438 U.S. 154, 155 (1978).
[33] *Id* at 156.
[34] *Id*.
[35] *Id* at 171.

by the defense is not "conclusory and[is] more than a mere desire to cross examine."[36] The defense has more than met its burden of production and is entitled to a *Franks* hearing.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests this Court to enter an Order granting the relief sought herein. In the alternative, it is respectfully requested that a hearing be ordered on this issue and granting such other and further relief as this Court may deem to be just and reasonable.

Dated: New York, New York
August 6, 2021

Respectfully submitted,

/s/ Marlon G. Kirton
Marlon G. Kirton
KIRTON LAW FIRM
Attorney for Defendant
ALEXEI SAAB
175 Fulton Avenue, Suite 305
Hempstead, New York 11550
(516) 833-5617 ph
(516) 833-5620 fax
kirtonlawfirm@gmail.com

/s/Esere J. Onaodowan
Esere J. Onaodowan, Esq.
Law Offices of Onaodowan & Delince
Associate Counsel for Alexei Saab
116 West 23rd Street, 5th Floor
New York, NY 10011
718-427-3139
eonaodowan@eocdlaw.com

---

[36] *Id*. at 171.