UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

ALEXEI SAAB,
    a/k/a "Ali Hassan Saab,"
    a/k/a "Alex Saab,"
    a/k/a "Rachid,"

                      Defendant.

19 Cr. 676 (PGG)

---

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S SECOND SUPPLEMENTAL PRETRIAL MOTION

 

AUDREY STRAUSS
United States Attorney
Southern District of New York
*Attorney for the United States*
    *of America*

Jessica K. Fender
Jason A. Richman
    Assistant United States Attorneys
        *Of Counsel*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT………………………………………………………1

II. RELEVANT FACTUAL BACKGROUND……………………………………………..1

    A. The Search Warrant Affidavit………………………………………………………1

    B. The Government's February 2021 Disclosure…………………………………….3

III. NO FRANKS HEARING IS WARRANTED IN THIS CASE………………………………..4

    A. Applicable Law……………………………………………………………………..4

    B. Discussion…………………………………………………………………………..6

    C. The Government's *Ex Parte* Supplement…………………………………………11

IV. CONCLUSION……………………………………………………………………………13

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's second supplemental pretrial motion (the "Franks Motion"). (Dkts. 117-119). In the Franks Motion, the defendant argues that the Court should conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) regarding an alleged material omission from an affidavit (the "Affidavit") sworn out during this investigation in support of a search warrant for certain of the defendant's electronic devices. As further detailed below, there was no material omission from the Affidavit and the Court should deny the Franks Motion without a hearing.

## RELEVANT FACTUAL BACKGROUND[1]

### A. The Search Warrant Affidavit

The Affidavit was sworn out on April 3, 2019, before Magistrate Judge Robert W. Lehburger in the Southern District of New York. (Dkt. 118, Ex. A). The Affidavit was offered in support of an application for a search warrant (the "Search Warrant") to search and seize materials from 29 electronic devices, which were themselves seized from the defendant and his residence pursuant to two other search warrants (the "Prior Warrants") issued by a Magistrate Judge in the District of New Jersey. (*See id.* ¶¶ 4, 7, 9). As outlined in the Affidavit, the Prior Warrants (which are not challenged in the Franks Motion) were predicated on a probable cause finding regarding the defendant's commission of offenses related to his participation in a fake marriage, and did not contain any details regarding his support of Hizballah. (*Id.* ¶¶ 7-8).

---

[1] The Government limits the facts and background section in this opposition brief to the facts relevant to the Franks Motion, and otherwise relies on the recitation of facts in its two prior opposition briefs. (Dkt. 33 at 7-20; Dkt. 99 at 2-6).

1

The Federal Bureau of Investigation ("FBI") executed the Prior Warrants on or about March 14, 2019. (*Id.* ¶¶ 3, 9). Between March 14 and April 3, 2019, the defendant participated in approximately five consensual interviews with the FBI. (*Id.* ¶ 9). During these interviews, the defendant admitted, among other things, that he was a member of Hizballah and joined Hizballah in approximately 1996, and that he was associated with Hizballah's "external operations" group, also known as the Islamic Jihad Organization ("IJO") or External Security Organization ("ESO"). (*See id.*). The defendant also described his training and certain operations he conducted on behalf of Hizballah, including his surveillance of landmarks in New York City, which included an assessment of how vulnerable they may be to explosive attacks, and operational travel he took to Istanbul, Turkey. (*Id.*). After the defendant made these admissions to the FBI, the Government obtained the Search Warrant to search the previously seized electronic devices for evidence, fruits, and instrumentalities of various terrorism-related offenses, in addition to the previously authorized offenses related to his fraudulent marriage.

The Affidavit contains over 16 pages of facts establishing probable cause (including probable cause related to the defendant's fraudulent marriage). (*Id.* at 5-22). The Affidavit includes two pages summarizing the investigation, *id.* at 5-6, two pages with background on Hizballah and the IJO, *id.* at 6-7, two pages regarding a cooperating witness ("CW-1") who was a former IJO member and whose experience paralleled the defendant's own and corroborated the defendant's admissions, *id.* at 8-10, and five pages containing the defendant's admissions regarding his involvement with Hizballah and the IJO, *id.* at 11-15. The Affidavit also contained six pages of facts supporting probable cause based on the affiant's training and experience in investigations of terrorism and marriage fraud offenses. (*Id.* at 16-22). For example, the affiant

detailed that, in his experience, individuals can store electronic files on electronic devices for years, including unwittingly after they believed they had deleted them. (*Id.* ¶¶ 19(a)-(b)). In sum, there was substantial probable cause outlined in the Affidavit borne from (a) the defendant's own admissions to the FBI; (b) corroboration of these admissions through interviews with CW-1 about his own history with Hizballah and the IJO; and (c) the affiant's own years of experience investigating individuals like the defendant, and particularly his experience regarding how such individuals utilize electronic devices in connection with their crimes.

### B. The Government's February 2021 Disclosure

On February 8, 2021, the Government sent the defense a letter reading:

> The Government writes to disclose that the Government does not dispute that Hizballah terminated its relationship with the defendant after Spring 2005, and no longer provided the defendant with any assignments, tasking, or training after Spring 2005.

(the "Disclosure Letter," *see* Dkt. 90 at ¶ 16). On May 24, 2021, the defendant filed a series of pretrial motions arguing, in relevant part, that the Court should order the Government to declassify and produce to the defense information regarding the timing of when the Government knew the information underlying the Disclosure Letter or, in the alternative, order the Government to provide defense counsel a security clearance so that counsel could review the material even if it remained classified. (Dkt. 90 at 18-20). At oral argument on this motion and other pending motions filed by the defendant, the Court asked defense counsel to detail why the timing of the Government's knowledge was important. (*See* 7/15/2021 Tr., attached as Exhibit A, at 7-8). Eventually, defense counsel responded that the Magistrate Judge who authorized the Search Warrant may have been misled by the Government's alleged omission of this information, and the Court responded that "[i]f the Government says that somebody was involved with Hezbollah

3

between '96 and 2005, it isn't exculpatory that they weren't involved with Hezbollah in 2006 through 2019." (Ex. A at 18). Finally, defense counsel nevertheless requested the opportunity to file a supplemental motion, and the Court granted this request. (Ex. A at 13, 70-71). The Franks Motion followed.

### No *Franks* Hearing Is Warranted in this Case

The defendant has not met his burden of establishing that a *Franks* hearing is warranted in this case. Nothing in the Affidavit is undermined by the Disclosure Letter; the information in the Disclosure Letter is already implicit in the Affidavit, and is entirely consistent with the facts set forth in the Affidavit establishing probable cause; and even had the information in the Disclosure Letter been included explicitly in the Affidavit, it would not have undermined the Magistrate Judge's finding of probable cause. As such, the Court should deny the Franks Motion without a hearing.

**A. Applicable Law**

A search warrant affidavit is presumed reliable. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing," *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks*, 438 U.S. at 154), that (i) there were "inaccuracies or omissions" in the affidavit, (ii) "the alleged falsehoods or omissions were necessary to the issuing judge's probable cause or necessity finding," and (iii) "the claimed inaccuracies or omissions [were] the result of the affiant's deliberate falsehood or reckless disregard for the truth." *United States v. Lambus*, 897 F.3d 368, 397 (2d Cir. 2018); *see also United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). Even if a defendant clears the first *Franks* hurdle with a substantial preliminary showing of a false statement or omission, the defendant is not entitled to a *Franks* hearing unless a reviewing court makes the legal

determination that the false statement or omission was "necessary to the [issuing] judge's probable cause finding." *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000).

To determine whether alleged errors and omissions are material, courts are instructed to amend the affidavit (adding alleged omissions and correcting alleged errors) and then determine whether the revised affidavit supports a finding of probable cause. *See, e.g.*, *Canfield*, 212 F.3d at 719 ("Our next step is to determine whether the corrected affidavit . . . with CI-1's criminal record revealed . . . nonetheless supports probable cause."). If the revised affidavit supports a probable cause finding, then "the inaccuracies were not material to the probable cause determination and suppression is inappropriate." *Canfield*, 212 F.3d at 718. Put another way, after adding the alleged omissions and correcting the alleged errors, the "ultimate inquiry" is whether "there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Martin*, 426 F.3d 68, 74 (2d Cir. 2005); *see also United States v. Levasseur*, 816 F.2d 37, 43-44 (2d Cir. 1987) (holding that no *Franks* hearing was required to reject suppression motion based on alleged deliberate falsehoods and failure to outline the informant's full history of pre- and post-cooperation criminal activity, drug and alcohol abuse, and psychiatric problems); *see also United States v. Fermin*, 32 F.3d 674, 676 (2d Cir. 1994) ("[W]e do not believe Judge Leval would have completely discounted the evidence presented through CI-1 even if CI-1's criminal history and time as an informant had been accurately reported.").

In addition, "even if the misrepresented or omitted information was material, a motion to suppress is to be denied unless the misrepresentations or omissions were intentional or deliberate, or were made in reckless disregard for the truth." *Lambus*, 897 F.3d at 399. The standard to demonstrate material false statements and omissions in an agent's affidavit is a "high one." *Rivera*,

928 F.2d at 604. The intent prong of *Franks* is particularly demanding with respect to omissions. "*Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*." *Awadallah*, 349 F.3d at 68 (emphasis in original). After all, "'[a]ll storytelling involves an element of selectivity,' and it is therefore not necessarily constitutionally significant that an affidavit 'omit[s] facts which, in retrospect, seem significant.'" *United States v. Lahey*, 967 F. Supp. 2d 698, 708 (S.D.N.Y. 2013); *see also United States v. DeFilippo*, No. 17 Cr. 585 (WHP), 2018 WL 740727, at *2 (S.D.N.Y. Jan. 31, 2018) ("As courts in this Circuit have recognized, it is not shocking that every affidavit will omit facts which, in retrospect, seem significant."). This "substantial preliminary showing" requirement explained above exists to "avoid fishing expeditions into affidavits that are otherwise presumed truthful." *Falso*, 544 F.3d at 125; *see also Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.").

### B. Discussion

The defendant does not seriously grapple with the intent prong of the *Franks* analysis, requiring him to demonstrate that the alleged omission in question was "the result of the affiant's deliberate falsehood or reckless disregard for the truth." *See Lambus*, 897 F.3d at 397. Instead, the defendant argues, without any support, that "[f]rom the Disclosure Letter, it was clear at the time that the Affidavit was drafted, the Government knew that Mr. Saab had already been terminated from Hizballah fourteen years prior to the drafting of the Affidavit." (Dkt. 118 at 8-9). The defendant does not explain how this was "clear" in the Disclosure Letter—nor could he, because the Disclosure Letter contains no such assertion. Further, the defendant cites in circular fashion that the "very existence of the Disclosure Letter" provides credible evidence that the

6

omission was "intentionally kept" from the Magistrate Judge, again without support in fact or law. (*Id.* at 9). Thus, the defendant has not met his burden of establishing that the affiant withheld the alleged omission "intentionally" or with a "reckless disregard for the truth," and the Franks Motion fails on this basis, standing alone.

Even if there was an intentional or reckless effort to mislead—and there was not—the omission was not material, providing another basis to deny the Franks Motion. As instructed by the Second Circuit, the appropriate inquiry is whether, after adding the information set forth in the Disclosure Letter to the Affidavit, the Affidavit still contains sufficient facts to establish probable cause. *Canfield*, 212 F.3d at 719. Here, there is no doubt that this is the case. Despite the defendant's efforts to make the Disclosure Letter broader than it is, it only includes the stipulation that "Hizballah terminated its relationship with the defendant after Spring 2005, and no longer provided the defendant with any assignments, tasking, or training after Spring 2005." (Dkt. 90 at ¶ 16). Already implicit in the Affidavit is the very information in the Disclosure Letter—there is *no* allegation in the Affidavit of any "assignments, tasking, or training" provided to the defendant by Hizballah after the Spring of 2005. Thus, in no way does including the information provided in the Disclosure Letter alter the quantum of probable cause already established by the facts in the Affidavit, and the defendant has fallen far short of his "substantial preliminary showing," *Falso*, 544 F.3d at 125, on this front, as well.

To be sure, there are certain limited facts in the Affidavit concerning activity after the Spring of 2005, all based on the defendant's admissions to the FBI:

- "In approximately December 2005 or January 2006, Saab traveled from the United States back to Lebanon. In Lebanon, Saab met with Handler-2[2] and told Handler-2 about the RDX incident and that Saab had been stopped and questioned when arriving at JFK Airport. In certain of the Saab Interviews, Saab further claimed to have told Handler-2 that he was done with Hizballah, i.e., that he was quitting ESO." (Affidavit ¶ 13(k)).

- "Next, in approximately April 2006, Saab again met with Handler-2. During certain of the Saab Interviews, Saab has claimed to have reiterated to Handler-2 at this time that he was not doing anything else for Hizballah—*i.e.*, confirming that he quit ESO." (Affidavit ¶ 13(l)).

- "In 2008, Saab attempted to contact Handler-2 but his telephone number was out of order. Saab explained that he sought to contact Handler-2 because he wondered what had happened to him during and after the 2006 conflict between Israel and Hizballah." (Affidavit ¶ 13(l)).

None of these facts relating to Saab's admitted post-2005 conduct are undermined by the Disclosure Letter (and are entirely consistent with its limited scope), and in any event they were a small part of the facts included in the Affidavit and proof provided by the Government in support of Judge Lehrburger's finding of probable cause. As such, even if the Disclosure Letter undermined these admissions and they were removed entirely from the Affidavit—and it does not, so they need not be—it would still not change the ultimate conclusion that there is sufficient probable cause in the amended Affidavit to support a finding that probable cause existed to

---

[2] "Handler-2" was used in the Complaint as an aggregate reference to three of the defendant's handling agents. (*See* Affidavit ¶ 13(d) n.7).

authorize the requested Warrant. Moreover, as reflected above, the Affidavit included multiple statements disclosing that Saab claimed at times to have told his handler in or about 2005/2006 that he was "quitting" and "not doing anything else for" Hizballah, reinforcing the extent to which the information in the Disclosure Letter was implicit in and entirely consistent with the Affidavit.

In his effort to save the Franks Motion, the defendant misconstrues and overplays the import of the Disclosure Letter. The defendant alleges that "the information in the Disclosure Letter specifically stated that as of Spring 2005, including and beyond the date of [t]he Affidavit, Mr. Saab was not involved with Hizballah." (Dkt. 118 at 8). This is incorrect. Again, all the Disclosure Letter stipulates is that "the Government does not dispute that Hizballah terminated its relationship with the defendant after Spring 2005 and no longer provided the defendant with any assignments, tasking, or training after Spring 2005." This is not in tension with other facts set forth in the Affidavit and additional proof that the Government will offer at any trial in this matter, including (i) the defendant's admissions that he tried to contact his Hizballah "handler" on trips to Lebanon in at least 2006, 2008, and 2010; and (ii) certain photographs and videos found on the defendant's electronic devices, some of which post-date the Spring of 2005. (*See, e.g.*, Compl. ¶ 21(h) (defendant's admissions that he was instructed to contact his handler on his trips to Lebanon); *id.* ¶¶ 25(b), 27(a)). Thus, by his own admission, the defendant did remain "involved' with Hizballah, by attempting to contact his handling agents and by continuing to take surveillance photographs and videos, even if he did not receive any new training, taskings, or assignments from Hizballah after that time. The Government did not, and does not, stipulate to the contrary, and any argument from the defendant on that point is misplaced.

In addition, the defendant cites to one case in support of his argument that the Disclosure Letter would have been material to Judge Lehrburger's finding of probable cause, *United States v. Lahey*, 967 F. Supp. 2d 698 (S.D.N.Y. 2013). *Lahey*, however, just reveals the weakness of the defendant's argument. In *Lahey*, the court considered in relevant part an allegation that a search warrant to search a residence contained several material omissions that would have undermined the finding of probable cause. 967 F. Supp. 2d at 717-27. After a thorough review of the affidavit in question and the evidence omitted therefrom, the court first held that the omissions (and certain misrepresentations) were reckless, and then turned to their materiality. *Id.* The court found that the corrected affidavit (with the omissions added, and the misrepresentations corrected or removed) was a "thin reed" on which to conduct the search in question, because the corrected affidavit "contain[ed] very little information specifically regarding" the defendant in question. *Id.* at 724. Indeed, the court emphasized that the affidavit was thin on probable cause even *before* the *Franks* analysis, *id.*, and after removing the material misrepresentations, there were only two facts purporting to support the search warrant in question, *id.* at 724-25. Thus, the court concluded that the search was premised "on very thin evidence connecting [the defendant] (let alone his residence) to the drug deal" in question and found the misrepresentation and totality of omissions at issue material. *Id.* at 727.

The situation in *Lahey* stands in stark contrast to the Affidavit at issue in this case. Here, there were seventeen pages of probable cause contained in the Affidavit, which, for the reasons detailed above, remain undisturbed by the Disclosure Letter. (*See* Affidavit at 5-22). Far from "very thin evidence," the Affidavit supplies reams of admissions from the defendant about his years of activity on behalf of Hizballah and the IJO, and further probable cause based on CW-1's

corroboration and the affiant's training and experience in years of counter-terrorism investigations, including facts supporting the conclusion that the devices to be searched likely contained evidence of the subject terrorism offenses going back many years, which further demonstrates the immateriality of the alleged omission. (*See id.* ¶¶ 19(a)-(b)). This stands in stark contrast to *Lahey*. Put simply, there was ample probable cause in the Affidavit, the Disclosure Letter does nothing to alter this conclusion, and the defendant cites to no cases that actually support his argument to the contrary.

In sum, the defendant's Franks Motion fails at both turns. First, the defendant has not adequately supported his allegation that there was any omission at all, much less that the supposed omission was intentional or a result of a reckless disregard for the truth. Second, any omission was not material. Instead, the facts stated in the Disclosure Letter were implicit in the Affidavit and explicitly including the information from the Disclosure Letter does not change the conclusion that probable cause to conduct the search existed. Thus, the Court should deny the Franks Motion.

### C. The Government's *Ex Parte* Supplement

In addition to the foregoing, the Government is filing today a classified, *ex parte* supplemental submission pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III § 4, and Federal Rule of Criminal Procedure 16(d)(1). Given the nature of the argument and information at issue, it is appropriate and necessary for the Court to consider this supplement *ex parte*. *See* Fed. R. Crim. P. 16(d)(1) ("Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon a motion by a party, the court may permit the party to make a showing, in whole or in part, in the form of a written statement to be inspected by the judge alone."); 18 U.S.C. App. 3 § 4 ("The court may permit the United States to make a request"

to deny or limit discovery of classified information "in the form of a written statement to be inspected by the court alone"); *see also*, *e.g.*, *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008). Indeed, courts routinely permit the Government to proceed *ex parte* when the substance of classified information that the Government seeks to withhold from discovery is explicitly discussed in the relevant motion. *See United States v. Saipov*, No. 17 Cr. 722 (VSB), Dkt. No. 212, at 5-6 (S.D.N.Y. Oct. 29, 2019). As such, and for the reasons stated therein, the Court should consider the Government's supplemental submission *ex parte* and under seal. The Government also respectfully submits, however, that the defendant's Franks Motion is properly denied solely on the grounds set forth herein, without regard to the classified supplement.

## **CONCLUSION**

For the foregoing reasons, as well as those in the Government's classified *ex parte* supplement, the Court should deny the defendant's second supplemental pretrial motion without a hearing.

Dated: New York, New York
       August 24, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney
Southern District of New York

By:    /s/
Jessica K. Fender
Jason A. Richman
Assistant United States Attorneys
(212) 637-2276 / 2589

cc: Defense Counsel
    (Via ECF)