UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    19 cr. 676 (PGG)

     - against -

ALEXEI SAAB,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## MOTION IN LIMINE RESPONSE

KIRTON LAW FIRM
Attorney for Defendant
ALEXEI SAAB
175 Fulton Avenue, Suite 305
Hempstead, New York 11550
(516) 833-5617 ph
(516) 833-5617 fax
kirtonlawfirm@gmail.com email
By: Marlon G. Kirton, Esq.
    Esere J. Onaodowan, Esq.
    Alexandra Tseitlin, Esq.

1

**POINT I- HIZBALLAH-RELATED MATERIAL ON MR. SAAB'S DEVICES
SHOULD NOT BE ADMITTED AT TRIAL**

The Government's Motion in Limine (Gov't Motion) serves a notice that it seeks to introduce certain videos and photographs found on Mr. Saab's external hard drive ("Hizballah Material") as direct evidence of Mr. Saab's support of Hizballah or, or in the alternative, as admissible other acts evidence pursuant to Rule 404(b).[1]  The Court should deny the Government's Motion in Limine in its entirety for the reasons that follow.

HIZBALLAH MATERIAL IS NOT ADMISSIBLE AS DIRECT EVIDENCE

The Government is seeking to introduce as direct evidence certain documents, labeled Hizballah Material, which consist of several photos and videos, all dated after 2005 (2006, 2007 and 2014).  The Government has no proof, and is not alleging, that Mr. Saab created this content or that he physically took the photos or videos.  According to the Government's Disclosure made on February 8, 2021, it "does not dispute that Hizballah terminated its relationship with the defendant after Spring 2005, and no longer provided the defendant with any assignments, tasking, or training after Spring 2005."[2]  Because the Hizballah Material is dated after 2005, these are remote and separate events from the charged conspiracy.

The remaining relevant Counts One, Two and Four in the Indictment allege that Mr. Saab (1) conspired to provide material support to Hizballah, (2) provided material support to Hizballah, and (4) received military-type training from Hizballah.  Therefore, if Hizballah terminated Mr. Saab in the Spring of 2005, the Hizballah Material cannot be deemed to arise out of "the same transaction or series of transactions as the charged offenses" because they are dated post-2005.  Counts One

---

[1] Govt Motion In Limine, page 13.
[2] See Government February 8, 2021, Disclosure Letter.

alleges a conspiracy and no conspiracy exists after Hizbollah terminated its relationship with Mr. Saab in 2005 because a conspiracy requires two or more parties to agree.

With respect to counts Two and Four, the same argument applies in light of the Court's Protective Order issued on December 10, 2021 ("December 2021 Protective Order").   The December 2021 Protective Order, a standing order by this Court., stipulates and states as follows:

> "The Government stipulates that Defendant Alexei Saab ceased Hizballah-related activities in or about the spring of 2005.   The Government further stipulates that Hizballah terminated its relationship with the Defendant in the spring of 2005, and no longer provided the Defendant with any assignments, tasking, or training after the spring of 2005."[3]

The Hizballah Material is not admissible as direct evidence because it is not relevant. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.  The Government argues that the Hizballah Material is "… relevant to show the defendant's state of mind and participation in the charged terrorism offenses—in particular, his knowledge and intent relating to Hizballah's ideology and terrorist conduct—and the effect these materials had on him, as he provided support to Hizballah in pursuit of its aims."[4]  The Government cites no authority in support of this proposition.

First, the Hizbollah Material does not bear on whether Mr. Saab had the required state of mind during the duration of conspiracy or the substantive count.  These materials do not depict or cite any acts of terrorism, wrongdoing, facilitation or active support of Hizbollah that may be attributable to Mr. Saab.  They document some of the political events in Lebanon, for example, references to the war with Israel in 2006 and Lebanon's devastation in its aftermath, a place in Beirut where Rafic Hariri was assassinated in 2005, and photographs of the Hizbollah rally in 2014.  They

---

[3] December 2021 Protective Order.
[4] Govt Motion In Limine, page 20.

do not provide background for the events alleged in the indictment and are not probative evidence on whether Mr. Saab knew that Hizbollah was a terrorist organization from 1997 to 2005, as alleged in the remaining relevant counts.  Because the Hizballah Material are dated after 2005, they are separate events from those that are charged conspiracy.[5]  Mr. Saab ceased Hizballah-related activities in or about the spring of 2005, and Hizballah no longer tasked him with any assignments or training after 2005, which supports the notion that Hizballah Material are not part of the same transaction or series of transactions.

Second, defense is prepared to stipulate that Mr. Saab knew that Hizbollah was a designated FTO.  As a result, the Hezbollah Material is also cumulative.  Thus, these materials have no "…tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6]

In addition, the Hizballah Material is not inextricably intertwined with the evidence regarding the charged offenses in the Indictment because the details of the other acts are not necessary to understand the charged transactions.[7]  Where the other acts "…'arose out of the same transaction or series of transactions as the charged offense, … [or] is inextricably intertwined with the evidence regarding the charged offense, or … is necessary to complete the story of the crime[s]' " for which a defendant is on trial, the evidence "is considered direct evidence of the charged offenses."[8]

In deciding whether uncharged conduct is "inextricably intertwined" with charged conduct, courts have considered whether "[the] details of the uncharged transaction are necessary to understand the charged transaction."[9]  None of the Hizballah Material is necessary to complete the

---

[5] *Compare*, *U.S. v. Salameh*, 152 F.3d 88, 110-11 (2d Cir. 1998).

[6] *United States v. Mostafa*, 16 F. Supp. 3d 236, 248 (S.D.N.Y. 2014).

[7] *See*, *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019)(quoting *United States v. Kassir*, No. 04 Cr. 356, 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)

[8] *Id.*

[9] *Johnson* at 204 (S.D.N.Y. 2019)(citing *Martoma*, 2014 WL 31191 (PGG), at *3, quoting *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007)).

story of the charged crimes because the story ends in 2005.[10]  The Hizballah Material does not

elucidate any of the charged acts and are remote in time (some dating from 2006, 2007 and 2014)

because the story in the indictment is straightforward.   In sum, none of the Hizballah Material

identified in the Government's submission arose out of the same transaction or series of

transactions as the charged offense, or are inextricably intertwined with the evidence of the charged

offense, or are necessary to complete the story of the crimes.

The Court should reject this evidence because it is not relevant, and in the alternative, its

probative value does not outweigh its prejudicial effect.


HIZBALLAH MATERIAL IS NOT ADMISSIBLE PURSUANT TO FRE 404(b)

Under FRE 404(b), evidence of "other acts" serves a proper purpose so long as it is not

offered to show the defendant's propensity to commit the offense.[11] Other acts evidence may be

admissible under Fed. R. Evid. 404(b) to show "motive, intent… knowledge, identity, or absence of

mistake or accident," but not to show character or propensity.[12]

The Hizballah Material is not admissible under Rule 404(b) because it is not being offered

for a proper purpose and the probative value of the Hizballah Material is substantially outweighed

by the risk of unfair prejudice to Mr. Saab.  The Hizballah Material does not attribute any

wrongdoing, bad acts or criminal intent to Mr. Saab. The alleged material is very remote in time

from the charged crimes and as such are not probative.  The longer is the lapse of time between the

acts labeled Hizballah Material and the charged acts, the more it undermines their probative value

---

[10] *United States v. Martoma*, No. 12 CR 973 PGG, 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) ("Courts have not found charged and uncharged conduct inextricably intertwined where '[t]he charged crimes are straightforward and may be fully understood without reference to [the uncharged conduct].")
[11] *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) See Fed.R.Evid. 404(b).
[12] Fed. R. Evid. 404(b); *United States v. McCallum*, 585 F.3d 471, 475 (2d Cir. 2009).

5

and heighten the risk of unfair prejudice.[13]  Some of the Hizballah Material is dated at least one year

and five months after the alleged conspiracy was terminated from the time Hizballah discharged Mr.

Saab and Mr. Saab ceased Hizballah related activities in the spring of 2005, and other is dated in

2014.[14]

      The Government seeks to introduce the Hizballah Material as evidence of Mr. Saab's

"…preparation, plan, knowledge, motive, intent, absence of mistake, and lack of accident.[15] Acts

attributable to Mr. Saab that allegedly took place a year and a half to nine years after the charged

conduct in the indictment are so remote in time that it renders them not probative of preparation,

plan, knowledge, motive, intent, absence of mistake, and lack of accident with respect to the charged

historic conduct.

      This Circuit follows the "inclusionary" approach to "other crimes, wrongs, or acts"

evidence, under which such evidence is admissible, unless it is introduced for the sole purpose of

showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403, or

not relevant under Fed. R. Evid. 402.[16]

      Under Rule 404(b), the Court must determine: (1) whether the evidence is offered for a

proper purpose; (2) whether the evidence is relevant to a material issue in dispute; (3) whether its

probative value is substantially outweighed by its prejudicial effect; and (4) upon request, the Court

must instruct the jury that prior acts evidence only be considered for the proper purpose for which it

was admitted.[17] Accordingly, "[t]he threshold inquiry a court must make before admitting similar acts

evidence under Rule 404(b) is whether that evidence is probative of a material issue other than

---

[13] *United States v. Serrano*, No. 13 CR. 58 KBF, 2014 WL 2696569, at *8 (S.D.N.Y. June 10, 2014))

[14] See, GX 205 (allegedly saved on Mr. Saab's hard drive on October 14, 2006) or GX204 (in 2014). Govt Motion In Limine, page 14

[15] Govt Motion in Limine, page 23.

[16] *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir. 1984); *United States v. Sappe*, 898 F.2d 878, 880 (2d Cir. 1990).

[17] *Huddleston, v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989).

character."[18]  The Hizballah Material is not probative of any material issue other than Mr. Saab's character.

The Government failed to identify any material issue in dispute to which the Hizballah Material would be relevant.  Defense does not dispute knowledge, intent, or motive in this case. The Hizballah Material further lacks probative value because there is no close parallel between the crimes charged and the Hizballah Material.[19]  Thus, the Government is seeking to admit the Hizballah Material for the sole purpose to show Mr. Saab's bad character, and propensity to commit further crimes after he and Hizballah mutually terminated their relationship in the spring of 2005.

If the other acts tend to prove a fact not in issue or "to excite emotions against the defendant," they create a prejudicial effect.[20]  This is further compounded by the fact that Hizballah Material does not attribute any wrongdoing, bad acts or criminal intent to Mr. Saab.  Instead, this evidence is calculated to evince prejudice against Mr. Saab.  Furthermore, the Hizballah Material is unnecessarily cumulative and runs the risk of confusing the jury.[21]

Finally, even if the Hizballah Material is marginally relevant, their probative value is substantially outweighed by unfair prejudice and its effect of misleading of the jury.[22] Under Rule 403, a district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice."[23]  "As with all evidence, uncharged criminal activity must have probative value that outweighs the danger of unfair prejudice to satisfy Federal Rule of Evidence 403."[24]

---

[18] *Huddleston*, 485 U.S. at 686.
[19] *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011).
[20] *Curley*, 639 F.3d at 57(quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980)).
[21] *Curley* at 57 (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir.1987)) (the other acts are not "…sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence.").
[22] FRE 403
[23] *United States v. Munoz*, 765 F. App'x 547, 550 (2d Cir.), cert. denied, 140 S. Ct. 182, 205 L. Ed. 2d 109 (2019) (citing Fed. R. Evid. 403.)
[24] *United States v. Cummings*, 60 F. Supp. 3d 434, 438 (S.D.N.Y. 2014), rev'd in part, 858 F.3d 763 (2d Cir. 2017).

"…[T]he risk that a jury will convict for crimes other than those charged - or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment-creates a prejudicial effect that outweighs ordinary relevance."[25]  In the instant case, that risk of prejudice is very real for Mr. Saab.  Although nothing in the Hizballah Material support any element the crimes charged in the Indictment, the jury is likely to improperly infer that Mr. Saab had the propensity to support Hizballah even after it terminated its relationship with him.[26] "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged."[27]

### Point II- MR. SAAB'S PROFFER STATEMENTS

The Defense will not be making a coercion argument. As a result, the Government should be precluded from introducing Mr. Saab's statements during counseled post-arrest proffers in the affirmative.

### Point III- THE DEFENSE'S HIZBALLAH EXPERT IS IN COMPLIANCE WITH THE LAW

The admissibility of expert testimony is governed by Federal Rule of Evidence (FRE) 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 US 579 (1993). A party seeking to call an expert must summarize the expert's proposed testimony pursuant to FRE 702.[28] The summary must describe the witness's opinions, the bases and reasons for those opinions, and the expert's

---

[25] *Old Chief v. United States*, 519 U.S. 172, 180–81, 117 S. Ct. 644, 650, 136 L. Ed. 2d 574 (1997) (quoting *United States v. Moccia*, 681 F.2d 61, 63 (C.A.1 1982).
[26] *See United States v. Kaiam Donovan*, Defendant., No. 20-CR-374 (PKC), 2021 WL 6065767, at *4 (E.D.N.Y. Dec. 22, 2021).
[27] *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 650, 136 L. Ed. 2d 574 (1997); See generally 1 J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence ¶ 403[03] (1996) (discussing the meaning of "unfair prejudice" under Rule 403).
[28] *United States v. Defreitas,* 2011 US Dist. LEXIS 9052, 17.

qualifications.[29] The purpose of the Rule is to provide the opponent with a fair opportunity to test

the merit of the expert's opinion through focused cross-examination.[30]  FRE 702 states the following

regarding the admissibility of expert testimony:[31]

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an expert by
> knowledge, skill experience, training, or education, may testify thereto in the form of an
> opinion or otherwise, if 1. The testimony is based upon sufficient facts or data, 2. the
> testimony is the product of reliable principles and methods, and 3 the witness has applied
> the principles and methods reliably to the facts of the case.

The proponents of expert testimony have the burden of establishing by a preponderance of

the evidence that the admissibility requirements of the Rule are satisfied the district court is the

ultimate gatekeeper.[32]  The district court must ensure that an expert's testimony rests on a reliable

foundation and is relevant to the task.[33] Finally, the probative value of the expert testimony must not

be outweighed by undue prejudice.[34]

## SUMMARY OF TESTIMONY

The Defense intends to call Prof. Thanassis Cambanis as its Hizballah expert at trial.[35] He

intends to testify that Hizballah is a Lebanese-based organization that has been designated as a

foreign terrorist organization by the US State Department. He will discuss the history, structure, and

methods of Hizballah in military, political and charitable matters. He will testify that between 2000

and 2008, Hizballah engaged in assassinations of political enemies and rivals. The sole method used

by Hizballah to commit assassinations during this period was bombing. If asked about Mr. Saab's

attempted shooting of a person described as an Israeli Spy, he will opine that the attempted shooting

---

[29] *Id.*
[30] *Id; citing United States v. Cruz,* 363 F.3d 187, 196 (2nd Cir. 2004).
[31] *Id at 17-18; citing FRE 702.*
[32] *Id; citing United States v. Williams,* 506 F.3d 151, 160 (2nd Cir 2007).
[33] *Id; citing Daubert v. Merrell Dow Pharms, Inc.,* 509 US 579, 597 (1993).
[34] *Id at 23; citing United States v. Mulder,* 273 F.3d 91,101 (2nd Cir. 2001); and FRE 403.
[35] See Attached CV.

is not consistent with the means of assassination used by Hizballah. He will leave to the jury the ultimate fact issue as to whether not Mr. Saab created a risk of death or serious physical injury as defined in 18 USC 3286 (b).

RELEVANCE OF EXPERT TESTIMONY

The Government will proceed to trial with Count 1, Count 2, and Count 4 of the Indictment. The statute of limitations for all three (3) charges is 8 years pursuant to 18 USC 3286 (a). The statute of limitations is extended if the commission of such an offense created a foreseeable risk of death or serious physical bodily injury to another person.[36] The Indictment alleges that "In or about 2005, at Hizballah's direction, Saab attempted to murder a person he came to believe was an Israeli spy."[37] Paragraph 3 (d) is alleged in Count 1, Count 2, and Count 4, extending the statute of limitations for all three (3) offenses.[38] The testimony of Prof. Cambanis will assist the jury in understanding the means and methods of assassinations used by Hizballah between 2000 and 2008 while allowing the jury to make the ultimate finding under 18 USC 3286 (b).

The Defense will challenge the statute of limitations for Counts 1, 2, and 4 by arguing that the 2005 event either did not happen, was a trust exercise, or a training exercise. The Defense will argue that Mr. Saab did not put anyone's life in danger during the 2005 incident. A statute of limitations defense is a non-jurisdictional defense that the defendant must raise at trial.[39]  When a defendant presses a statute of limitations defense, the Government then bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period.[40]

---

[36] 18 USC 3286 (b).
[37] Indictment at pages 2-3,  Paragraph 3 (d).
[38] Id at pages 2,3, and 6.
[39] *Musacchio v. United States,* 577 US 237, 248 (2016).
[40] *Id.*

The Defense formally asks that the jury makes the following finding of fact with respect to Counts 1, 2 and 4:[41]

In or about 2005, at Hizballah's direction, did Alexei Saab attempt to murder a person he came to believe was an Israeli spy? Yes _____ or No _____. If No, do not consider the second question. If Yes:

Did the actions of Mr. Saab create a foreseeable risk of death or serious physical bodily injury to another person?

## QUALIFICATIONS OF EXPERT

Prof Cambanis is an employee of The Century Foundation (TCF). TCF was founded in 1919 and is a progressive, independent think tank that conducts research and develops solutions that drive policy changes that make people's lives better.[42] TCF promotes US foreign policy that fosters international cooperation, peace, and security.[43] Prof. Cambanis is currently the director of Century International at the TCF. His focus is on the Arab world and the Middle East. He consultants with policymakers, governments, and international organizations about the Middle East and the Arab world. He supervises ten (10) TCF Fellows.

Prof. Cambanis was born and raised in North Carolina to Greek Orthodox parents. He graduated from the University of North Carolina at Chapel Hill (UNC) with a Bachelor of Arts Degree with a double major in History and Creative writing. He graduated from UNC Phi Betta Kappa. He is fluent in Greek and French. He can read Arabic and has an intermediate level of proficiency in speaking Arabic. Prof. Cambanis graduated with a Master's in Public Affairs from the Woodrow Wilson School of Public and International Affairs at Princeton University. He was a

---

[41] This is an affirmative position by the Defense, and the Government may choose to respond.
[42] https://tcf.org/about

[43] Id.

journalist with the Boston Globe from 2000-2018. He was a foreign correspondent, for the Boston Globe, from 2003-2007. During that period, he covered the US-led invasion of Iraq and the 2006 War between Israel and Hizballah. Prof. Cambanis worked as Iraq Bureau Chief and later as the Middle East Bureau Chief for the Boston Globe. He wrote several dozen articles about both wars during this time frame. He interviewed fighters from Hizballah and other Hizballah members during the 2006 war. While working for TCF, Prof. Cambanis lived in Lebanon from 2013-2018. During this period, he visited South Lebanon on many occasions, including Mr. Saab's hometown of Yaroun. During this period, he interviewed Hizballah fighters, family members of Hizballah fighters, and Hizballah policymakers.

Prof. Cambanis authored a book, published in 2010 by Simon Schuster, called, *A Privilege To Die: Inside Hezbollah's Legions and Their Endless War.* The book is about Hezbollah's military operations. He interviewed Hezbollah fighters in Lebanon as part of his research. Prof. Cambanis has also written two (2) peer-reviewed chapters for other publications. First, in 2018, he wrote a chapter about Hizballah for a publication called *Order From Ashes: New Foundations for Security in the Middle East.* There were 18 contributors to this publication. Prof. Cambanis authored a chapter on Hezbollah, Israel, and UN mediation. The article discussed the geopolitical aspects of Hizballah.[44] His contribution was peer-reviewed. Second, in 2019, he wrote a chapter for a publication called *Hybrid Actors: Armed Groups and State Fragmentation in the Middle East.*[45]  The publication covered the role of non-state actors in conflict and governance. His contribution focused on the military aspects of Hizballah. His contribution was peer-reviewed.

---

[44] See, Cambanis cv.
[45] Id.

12

Prof. Cambanis regularly consults publicly available data in support of his research. He reviews United Nations reports, press reports from Israel, press reports from Lebanon, and terrorist databases.

Prof. Cambanis is an adjunct professor at the Columbia University School of International and Public Affairs. He teaches a course called "Writing About War." He created the course, and he instructs graduate students studying security policy. [46]

FRE 403

Finally, the testimony of Prof. Cambanis will aid the jury and not confuse the jury. He will testify about the history of Hizballah and, more specifically, about the means and methods of assassination used by Hezbollah between 2000-2008. Prof. Cambanis' mandate is clear, and his testimony is not substantially prejudicial to the Government within the meaning of FRE 403.

BAIL HEARING

The Defense submitted an affidavit from Prof. Cambanis in support of a motion for bail.[47] The Bail Reform Act of 1984 (B.R.A.) allows a district court to detain a defendant, pending trial, after an adversarial hearing.[48] At the hearing, a defendant is entitled to 1. Counsel, 2. The right to testify, 3. The right to proffer evidence, and 4. The right to cross-examine witnesses presented by the Government.[49] The affidavit submitted by Prof. Cambanis was evidence submitted by the Defense in support of Mr. Saab's bail application. It was never intended to be a document in compliance with FRE 702.

The Defense requested an adjournment of the trial because the pretrial issues were unresolved.[50] The Defense argued that it would be challenging to craft a trial strategy without a

---

[46] Id.
[47] US PACER, Docket Entry # 89.
[48] *United States v. Salerno*, 481 U.S. 739, 741 (1987).
[49] *Id.* 705-706.
[50] US PACER,  Docket Entry#129 and #132.

ruling from the Court.[51] The Court ruled on all pretrial issues on December 10, 2021.[52] The Defense did not decide until December 21, 2021, that Prof. Cambanis would be its Hizballah expert. The factual and legal landscape of the trial became clearer after December 10, 2021.





### Point V- HIZBALLAH DESIGNATION AS A FOREIGN TERRORIST ORGANIZATION

The Defense is willing to stipulate that Hizballah was designated a foreign terrorist organization on

October 8, 1997.

### CONCLUSION

The Defense requests that the Court deny the Government's Motion in Limine.


Sincerely,


<u>s/Marlon G. Kirton</u>     <u>s/Esere J. Onaodowan</u>     <u>Alexandra Tseitlin</u>
Marlon G. Kirton, Esq.   Esere J. Onaodowan, Esq.   Alexandra Tseitlin, Esq.

15