# *KIRTON LAW FIRM*

*Marlon G. Kirton, Esq.*

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

April 9, 2022

VIA ELECTRONIC FILING

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall
United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *United States v. Alexei Saab, 19 cr. 676 (PGG)*

Dear Judge Gardephe:

    I represent Alexei Saab in the above-referenced matter. This Court scheduled a jury trial commencing April 20, 2022. The Defense moved, pursuant to Rule 15 of the Federal Rules of Criminal Procedure (FRCP), that Defense expert Michele Bush be deposed before the trial to preserve her testimony for the jury or, in the alternative, to testify at trial via CCTV. The Government opposed the application. This letter is the Defense's reply to the Government's opposition.

## UNAVAILABILITY

    The Government argues that the Defense has not established that the witness is unavailable.[1] The Defense disagrees.

## FACTUAL/PROCEDURAL BACKGROUND

    The Government filed a motion in limine on December 20, 2021.[2] On December 26, 2021, the Defense tasked Ms. Bush with evaluating the Government's claims regarding the forensic evidence. The parties appeared at a final pre-trial conference on January 5, 2022. The

---

[1] *Government response, page 9.*
[2] *Government's motion in limine, Docket #141.*

1

Court granted the Defense's request to adjourn the trial. The Court adjourned the trial to April 18. 2022.[3] On January 20, 2022, Ms. Bush sent the Defense a 40-page analysis of the Government's proposed forensics evidence. The Defense notified Ms. Bush that we wanted to call her as a witness on January 29, 2022. The manager of Loehrs Forensics[4] notified us, in writing, the same day that Ms. Bush was not available for an April 18th trial date because she would be out of the country from April 11, 2022, to May 3, 2022. The Defense gave the Government Rule 16 notice for Ms. Bush on March 14, 2022. The Second Circuit approved a trial budget for the Defense on March 22, 2022.[5] The Defense notified Ms. Bush on March 23, 2022, that the Approved Budget authorized her services. Lohers Forensics informed the Defense the same day that Ms. Bush was unavailable for an April 18th trial. The Budget approved Ms. Bush at $200.00 per hour for her services and a travel authorization of $1525.00. The Defense conferred with the Government on March 23, 2022, regarding scheduling matters. The Defense discussed Ms. Bush's travel schedule and inability to appear in person. The Defense suggested that she testify via deposition before the trial or an appearance at the trial via CCTV. The parties discussed a stipulation that could be submitted instead of her testimony.[6] The Government indicated that it would likely oppose a Rule 15 application. The Defense submitted a draft of its Rule 15 motion to the Government on March 28, 2022.[7] In the draft motion, the Defense offered to have Ms. Bush appear in New York on April 5, 2022, for a deposition.[8] The Defense filed a formal Rule 15 motion on April 3, 2022. The Government responded on April 7. 2022.

## ARGUMENT

A witness is unavailable if the moving party has made good faith efforts to procure the witness to testify and cannot get the witness to appear.[9] The moving party need not submit affidavits in support of an assertion of unavailability.[10]  In the case at bar, the Defense has proffered the facts and circumstances of the witness's availability in this submission and its April 3rd motion.[11] Mr. Saab is indigent under the Criminal Justice Act (CJA). A witness can be subpoenaed to appear in Court for trial under Rule 17 of the FRCP.[12] The Defense, if authorized, can procure a flight from the US Marshal Service, reimbursement of hotel and incidental expenses from the US Marshal Service, and $40.00 per day for a witness's time.[13] Ms. Bush has already been approved at $200 per hour for her time. Ms. Bush has been approved for up to $1525 for air travel, lodging, and incidental expenses to appear in New York to testify at trial. Finally, the Defense submitted a copy of the Approved Budget to Loehrs Forensics on March 23, 2022. The Defense made a good faith effort to secure her testimony. The Defense

---

[3] Subject to the SDNY selection system. The trial date was confirmed for April 20, 2022.
[4] Ms. Bush's employer.
[5] The Defense consulted with Second Circuit Budget Coordinator Alan Nelson during the budget process.
[6] These discussions are ongoing.
[7] *See, Exhibit A.*
[8] *Id at page 2.*
[9] *United States v. Vilar,* 568 F.Supp2d 429, 438 (SDNY 2008), *citing United States v. Johnpoll,* 739 F.2d 702, 709 (2nd Cir. 1984).
[10] *Id.*
[11] The Defense is willing to provide a redacted copy of the letter from Loehrs Forensics and a redacted copy of the Approved Trial Budget if ordered by this Court.
[12] *Rule 17 FRCP.*
[13] *Rule 17 (b) FRCP.*

arranged for her to be compensated. The Defense arranged for her to travel to and from New York. The witness is unavailable.

## RELEVANT TESTIMONY

### THE TESTIMONY NEED NOT BE EXCULPATORY

The Government argues that the testimony of a defense witness must be exculpatory pursuant to Rule 15 of the FRCP. This is untrue. The Second Circuit has held that Rule 15 depositions may proceed where 1. The witness's testimony is material; 2. The witness is unavailable, and 3. Allowing the testimony furthers the interests of justice.[14] The Second Circuit has not held that materiality means exculpatory.[15]

In the case at bar, the testimony of Ms. Bush is relevant, material, and substantiated by her research of this case. On December 26, 2021, the Defense tasked Ms. Bush with evaluating forensics claims made in the Government's December 20, 2021, motion in limine. The Defense assigned Ms. Bush to see whether or not the Government's means and methods were accurate and whether the Government's conclusions were valid. Loehrs Forensics hosted the forensics images of Mr. Saab's devices since the beginning of this case. The Defense did not become aware until December 20, 2021, of how the Government intended to use this evidence. Ms. Bush sent the Defense a 40-page analysis of her findings on January 20, 2022. On January 29, 2022. The Defense informed Ms. Bush that she would be a witness at the trial. The Defense sent the Government notice of her proposed testimony on March 14, 2022. It is baffling that the Government now claims that her testimony is unsubstantiated, vague, and without foundation. The Government has a summary of her testimony. All of the proposed testimony of Ms. Bush is based on the detailed analysis contained in her 40-page report. Ms. Bush has been qualified as a forensics expert on dozens of state and federal courts cases. The Defense stands ready to defend her qualifications, research, and conclusions in this case.

### THE TESTIMONY IS NOT CUMULATIVE

The Government acknowledges that the testimony of its expert is nearly identical to Ms. Bush's proposed testimony.[16] The Government has a short memory. The Government's motion in limine concerning Mr. Saab's forensic image states the following:

**The Hizballah material is admissible as direct proof of the charges of terrorism-related offenses. First, the Hizballah Material is direct evidence of the knowledge components of Counts One through Four of the Indictment. For each count, the Government must prove that the defendant knew that Hizballah was a designated terrorist organization involved in terrorism. The defendant's photographs of the Rally at the site of**

---

[14] *United States v. Avenatti*, 2022 U.S. Dist. LEXIS 5395 citing; *Gigante* at 81. *United States v. Mostafa,* 14 Supp.3d 515, 518 (SDNY 2014).
[15] *Id.*
[16] *Government response, page 12.*

3

**the Hariri assassination-marking important events in Hizballah's history-also speak to his knowledge of Hizballah, in addition to his involvement in the organization. Second, the Hizballah Material is inextricably intertwined with the rest of the Government's evidence of the defendant's support for and activities on behalf of Hizballah such that the presentation of those materials will help the jury understand the complete story of the defendant's conduct and intent to further Hizballah's aims. His possession of videos lionizing Hizballah terrorists and spies- further establishes the defendant's support for and involvement with Hizballah at a crucial juncture for the organization. The Government argues in the alternative that this evidence is admissible pursuant to Rule 404 (b).[17]**

The Defense's task to Ms. Bush was intended to address the Hizballah-related materials discussed by the Government. Based on her research and the metadata, she would testify, inter alia, 1. There is no proof of the origin of the download, 2. There is no proof that Mr. Saab read or reviewed any material, 3. There is no proof that Mr. Saab shared the material, 4. Mr. Saab made a mass download of material in 2013, including the Hezbollah-related material. There is no proof that this download was anything other than an administrative act. 5. The Hezbollah material was not organized in the same file or subfile. The materials were randomly scattered on Mr. Saab's devices.

The Government uses the term "saved by the defendant" five times when describing forensic images on Mr. Saab's devices.[18] Ms. Bush will testify to the technical definitions of "saved ."For example, some platforms automatically save certain documents without the user's input.[19]

Ms. Bush's research is more detailed than the Government's expert. The Government expert will testify that the Government Exhibits 201-205, 26, 211, 212, 220, and 221 were downloaded after the Spring of 2005. Ms. Bush analyzed all of the devices and has a detailed timeline of how and when the images traveled from one device to another. The Government's expert did not analyze this issue. Ms. Bush will give the technical definition of "download." She concluded that transferring these items from one device to the next was nothing more than an administrative download that took less than one hour. She will also conclude that the items were not saved together in one subfile. Her testimony will explain the transfer of the Hizballah Materials after the Spring of 2005.

The Defense will argue that mere possession of these materials does not indicate his material support of Hizballah because there is no proof that he reviewed or shared the material. The Defense will argue that there is no proof that he created a particular "Hizballah subfile" on his devices. The Defense will argue that the mere presence of these items on his devices does not indicate Mr. Saab's support for Hizballah. The Defense engaged Ms. Bush based on the anticipated testimony of the Government's witness. The expected testimony of the Government's expert is contained in Docket Entry #141.

---

[17] *Government's Motion In Limine, Docket Entry #141, pages 19-22*.
[18] *Id, pages12-13*.
[19] *Defense Rule 16 motion, Exhibit A, page 3*.

4

The fact that the Government is now claiming testimony and analysis not contained in its December 20, 2021, filing is confusing. Ms. Bush's testimony is based, in part, on research and analysis not conducted by the Government's expert and is therefore not cumulative.

### THE TESTIMONY IS IN THE INTERESTS OF JUSTICE

The Defense reply contains a detailed timeline regarding the Rule 15 application. The Rule 15 application does not prejudice the Government and is timely. The Government disclosed its proposed use of the Hizballah-related material three (3) weeks before the scheduled January trial date. The fact that the Defense had the data from the beginning of the case is irrelevant if the Government doesn't lay out how it will use the evidence. At a pre-trial conference in 2019, the Defense asked the Government what proof it had concerning Mr. Saab's involvement with Hizballah after the Spring of 2005.[20] (Counsel has had many AUSAs outline the theory of a case and the discovery related to the theory) Loehrs Forensics conducted nearly 100 searches of the eight (8) terabytes of data they hosted and could not find any evidence of Mr. Saab's involvement after the Spring of 2005.[21] It was not until The Government's Motion in Limine, three (3) weeks before the trial, that this post-2005 evidence emerged. The photos referenced in the complaint were all taken on or before the Spring of 2005, but the downloading of the materials took place after the Spring of 2005. This fact makes them relevant in proving Counts 1,2, and 4.

Mr. Saab would suffer prejudice if he were denied the testimony of his forensics expert. The Defense provided expert notice more than one month before the trial. The Government now moves to preclude her testimony on the eve of trial. Mr. Saab has been branded a dangerous terrorist by the Government. His case has received universally negative press accounts. The Government seeks to preclude clear evidence that he was not providing material support to Hizballah. The Defense Rule 15 motion should be granted.

The Defense requests that this application be granted in its entirety, or the alternative, a hearing be granted.

Sincerely,

s/Marlon G. Kirton
Marlon G. Kirton, Esq.

cc: Jason Richman, Assistant United States Attorney (via electronic mail)
    Samuel Adelsberg, Assistant United States Attorney (via electronic mail)
    Esere Onaodowan, Esq. (via electronic mail)
    Alexandra Tseitlin, Esq. (via electronic mail)

---

[20] *Exhibit B. Transcript 12/19/2019 page 5-6.*
[21] The Government disclosed to the Defense on February 8, 2021, that Hizballah terminated its relationship with Mr. Saab after the Spring of 2005 and gave him no further tasks. *Defense Memorandum, Docket Entry # 90, page 6.*

5