

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 11, 2022

**VIA CM/ECF**

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Alexei Saab*, 19 Cr. 676 (PGG)

Dear Judge Gardephe:

      The Government respectfully writes to provide the Court with additional information regarding certain Hizballah related materials, which the Government is seeking to introduce at trial. By way of background, at the final pretrial conference on January 5, 2022, the Court determined that Government Exhibits 201-203, 205-206, 210-212, and 220-221 (the "Hizballah Materials") were relevant under Federal Rule of Evidence 401, and otherwise admissible under Federal Rule of Evidence 404(b), but that it required additional information—and in particular, additional information about any accompanying expert testimony—before conducting its balancing analysis under Rule 403. (*See* January 5, 2022 Transcript ("Tr.") 10, attached hereto as Exhibit A).[1] As detailed below, the Government respectfully submits that because these exhibits and the accompanying expert testimony are highly probative and are not unduly prejudicial, the Court should admit them during the Government's case-in-chief.

      **I.**    **Expert Testimony Regarding the Hizballah Materials**

      The Government previously described the Hizballah Materials it intends to introduce at trial. (*See* Dkt. 141 ("Gov't MILs") 12-16).[2] Below, the Government supplements its prior descriptions of these exhibits, including by describing more specifically other evidence and anticipated testimony at trial that bear on the exhibits:[3]

---

[1] The Court also precluded the Government from admitting GX 204—a video saved on the defendant's device in 2014—concluding that it was "too remote to be probative of any relevant fact in this case." (Tr. 4). Furthermore, in streamlining its evidence for trial, the Government has determined that it will no longer seek to admit GX 203 and GX 206.

[2] The Government also provided the Court with copies of the proposed exhibits along with its initial motions *in limine* submission. (*See* Dkt. No. 141).

[3] Attached hereto as Exhibit B are updated translations of GX 201-202 and GX 205.

- **GX 201.** This video contains a poem about Hizballah and includes imagery of Hizballah flags, Hizballah Secretary General Hassan Nasrallah, and the logo of Al-Manar, a Lebanese satellite television station owned and operated by Hizballah, indicating it was produced by Al-Manar.  The text of the poem glorifies the efforts of Southern Lebanese inhabitants in fighting Israeli forces, focusing specifically on their knowledge of the terrain in Southern Lebanon.

    o   The Government seeks to play the video for the jury and offer a transcript that transcribes and translates the poem.

    o   The Government will introduce an email sent by the defendant on or about September 20, 2006, in which this video was attached.

    o   The Government will introduce testimony that the defendant admitted in his interviews with the FBI to spying on Israeli and Southern Lebanese Army forces on behalf of Hizballah in Southern Lebanon in the late 90s and planting an IED targeting Israeli troops in the area as well.  The defendant also discussed and identified other co-conspirators who participated in the same conduct for Hizballah in Southern Lebanon.  Further, the defendant admitted attending a rally led by Nasrallah, further discussed below.

    o   The Government anticipates eliciting testimony from its expert witness on Hizballah, Dr. Matthew Levitt, to provide helpful context for the jury in considering this video.  In particular, Dr. Levitt is expected to testify about Secretary General Nasrallah and his role as the leader of Hizballah, the logo and mission of Al-Manar, and Al-Manar's designation in 2006 as a Specially Designated Global Terrorist entity by the United States Department of the Treasury.  Dr. Levitt will also testify about both the symbolic and tactical significance of the inhabitants of Southern Lebanon in Hizballah's decades-long fight against Israel.  The Southern Lebanese have been at the forefront of pro-Hizballah militant activities geographically and militarily, playing a central part in Hizballah's armed resistance to Israel's occupation of Southern Lebanon in the late 1990s and often conducting surveillance activities for the group.  As a result, Hizballah propaganda often glorifies the sacrifice of this population to, among other things, maintain the group's support and continue recruiting militants in the area immediately bordering northern Israel.

    o   The defendant's possession of this video is relevant to his knowledge of Hizballah, its status as a terrorist organization, its leaders, and its terrorist activities.  It is also corroborative of the defendant's admissions—the veracity of which the Government expects to be a central feature of the defense at trial.  In evaluating whether the defendant in fact planted a bomb and otherwise provided operational support to Hizballah militias in Southern Lebanon attacking Israeli troops, the jury should be able to consider the highly probative fact that the defendant saved a Hizballah video glorifying that same conduct years later.

- **GX 202.** This video contains Hizballah propaganda in the form of a poem glorifying Southern Lebanon and its inhabitants. In particular, the poem glorifies the "martyrs" of Southern Lebanon who fought in the "conquest of Lebanon." At the end of the video, the text "the open war" is displayed on the screen. The video also displays the logo of Al-Manar.

    o  The Government seeks to play the video for the jury and offer a transcript that transcribes and translates the poem and the text on the screen at the end of the video.

    o  The Government will introduce an email sent by the defendant on or about September 20, 2006, in which this video was attached.

    o  Dr. Levitt is expected to testify about the use of the term "martyrs" in Hizballah propaganda as a reference to those killed on behalf of the group and its mission. Dr. Levitt is also expected to testify that the term "open war" has been famously used by Nasrallah on several occasions to refer to violence by Hezbollah against Israel and its allies in geographies beyond just Southern Lebanon and Israel.

    o  The Government will introduce testimony that the defendant admitted in his interviews that after emigrating to the United States in 2000, he conducted surveillance on behalf of Hizballah for attacks to be committed in the United States and understood that he might need to participate in the attacks. The defendant also admitted to spying on Israeli and Southern Lebanese Army forces on behalf of Hizballah in Southern Lebanon and planting an IED targeting Israeli troops in the area as well.

    o  The defendant's possession of this video is relevant to his knowledge of Hizballah, its status as a terrorist organization, and its terrorist activities. In particular, given the use of the term "martyrs" and the reference to Nasrallah's proclamations of "open war" beyond Lebanon and Israel, the video is also relevant to show the defendant's knowledge of Hizballah's broader aims of attacking Israeli and U.S. interests globally and his willingness to plan and execute attacks himself. Relatedly, the defendant admitted to the FBI, among other things, that he surveilled Jewish and Israeli-connected targets in the United States. This provides an additional basis for why the defendant's possession of this video is highly relevant—the video corroborates the defendant's admissions by glorifying what the defendant admitted doing, *i.e.*, carrying out an "open war" against Israel on behalf of Hizballah. Finally, just as with GX 201, the jury should be able to consider that the defendant saved a Hizballah video glorifying violent conflict with Israel when assessing whether the defendant planted a bomb and otherwise provided operational support to Hizballah militias in Southern Lebanon attacking Israeli troops.

- **GX 205.** This video depicts a message from Hassan Nasrallah to Hizballah militants in support of Hizballah's ongoing conflict with Israel. The video includes images and names of individuals who have been killed during fighting with Israel. The text of the video

includes the text: "peace be upon you, the light of Jihad and the muhjadin." The text also includes references to the fighting against the "enemy's soldiers" in Lebanese towns bordering Israel and references several infamous Hizballah leaders, terrorists, and spies, including Samir Kuntar and Nissim Naser (who are discussed below). The video also displays the logo of Al-Manar.

- o The Government seeks to play the video for the jury and offer a transcript that transcribes and translates the video.

- o The Government will argue that the metadata indicates that the defendant saved this video on or about October 14, 2006.

- o Dr. Levitt is expected to testify about the use of the terms "jihad" and "mujahadin" in Hizballah literature and propaganda, explaining, in particular, that the terms refer to the fight against the supposed enemies of Islam and the guerilla militants attacking those enemies, respectively. Dr. Levitt will also discuss the various towns and villages mentioned in the video, noting their historical significance in Hizballah's armed struggle against Israel and their proximity to Yaroun (where the defendant was born). Finally, Dr. Levitt will briefly explain the identities and significance of the Hizballah militants referenced in the video. For example, Dr. Levitt will testify that Samir Kuntar was arrested by Israelis for his role in the murder of several Israeli citizens during a 1979 raid and Nissim Naser was a Hizballah spy tasked with, among other things, supplying the group with maps of Tel Aviv marking electricity and gas installations.

- o The defendant's possession of a video glorifying notorious Hizballah spies and terrorists is highly probative of whether he conducted violent and espionage-related activities for Hizballah. Indeed, the defendant's knowledge of and intent to participate in Hizballah's violent and espionage-related conduct is a central issue in the case, making evidence that he possessed media glorifying this conduct highly relevant to the Government's case. Relatedly, the video is relevant to the defendant's knowledge of Hizballah's terrorist activities and its pursuit of violent "jihad." The video further corroborates the defendant's admissions, particularly regarding his work as a spy for Hizballah in Southern Lebanon and his use of the term "jihad" in his post-arrest statement in explaining that his brother was not a "full-time jihadi or Hizballah member."

- **GX 210, 211, & 212.** These exhibits consist of three photographs of a large Hizballah rally in Lebanon on March 8, 2005 (the "Rally"), including a photograph of Hassan Nasrallah speaking at the event.

    - o The Government seeks to display the photographs to the jury during the testimony of FBI Special Agent Tony Cipriano. Special Agent Cipriano is expected to testify that, during his meetings with the defendant, the defendant admitted to attending the Rally and photographing the event.

- o The Government will argue that the metadata indicates that the defendant saved these photographs on or about March 8, 2005—the day of the Rally.

- o Dr. Levitt is expected to testify that the Rally was a momentous event in Hizballah history. In fact, to this day, Hizballah's faction in Lebanese politics is referred to as the March 8 Alliance. Dr. Levitt will also testify that at the Rally, Nasrallah, who rarely appears in public, delivered a notable speech demanding that the United States stop "meddling" in Lebanon and urging Hizballah supporters to support a continued Syrian troop presence in the country.

- o The defendant's possession of photographs of a Hizballah rally is relevant to his knowledge of Hizballah, its leadership, and its activities. The photographs further corroborate the defendant's admissions regarding his participation in the group and his attendance at a notable event in Hizballah's history. In particular, the defendant's attendance at the Rally demonstrates his devotion to Hizballah, at a time period when the organization was loudly and publicly denouncing the United States. The timing of these photographs in March 2005 is also consistent with—and therefore corroborative of—the defendant's admissions regarding his operational activity for Hizballah, including explosives training and surveillance taskings he undertook during this same period. Finally, the defendant has at times alluded to a defense that his admissions to the FBI were puffery. The fact that the defendant possessed these photographs—of a rally in Lebanon led by the Hizballah Secretary General—is relevant context to any such argument that he did not actually support Hizballah.

- **GX 220 & 221.** These exhibits consist of two photographs of the St. George Hotel in Beirut, Lebanon—the site of the bombing that assassinated former Lebanese Prime Minister Rafic Hariri.

    - o The Government seeks to display the photographs to the jury during the testimony of FBI Special Agent Cipriano. Special Agent Cipriano is expected to testify that the defendant admitted, during his interviews with the FBI, to photographing the site of Hariri's assassination a few weeks after the explosion. He also admitted that he studied the blast site as part of his Hizballah explosives training and was tasked with evaluating the type of explosive used at the site.

    - o Dr. Levitt is expected to testify about the 2005 assassination of Hariri and its watershed impact on Lebanese politics generally and Hizballah specifically. In particular, the assassination—which occurred approximately three weeks before the Rally—led to widespread calls for the withdrawal of Syrian troops in Lebanon, a development that Hizballah sharply opposed and which served as the central rationale for Hizballah organizing the Rally. Dr. Levitt will also testify that a United Nations-backed tribunal in the Hague ultimately convicted a Hezbollah militant in the Hariri assassination.

- o The Government will argue that the metadata indicates that the defendant saved these photographs on or about March 8, 2005—just weeks after the assassination.

- o The defendant's possession of photographs of the blast site of a Hizballah terrorist attack is relevant to his knowledge of Hizballah, its status as a terrorist organization, and its terrorist activities. The photographs also corroborate the defendant's admissions regarding his participation in explosives training and studying the blast site. Finally, this also is relevant to any defense argument that the defendant was exaggerating his admissions to the FBI or did not support Hizballah.

## II. The Hizballah Materials Are Not Unduly Prejudicial

The admission of the Hizballah Materials is entirely consistent with Rule 403. The probative value of this evidence is not outweighed, much less "substantially outweighed," by any risk of unfair prejudice. Fed. R. Evid. 403. As detailed above, the Hizballah propaganda videos are highly probative of the defendant's knowledge and intent in joining Hizballah, undergoing explosives and firearms training with Hizballah, conducting violent missions for the group in Southern Lebanon, and surveilling potential attack sites in Manhattan and elsewhere on its behalf, among other things. And the photographs of the Rally and the site of the Hariri assassination corroborate the defendant's admissions regarding these events and demonstrate his continued involvement in the group as late as March 2005. Crucially, the Hizballah Materials are significantly *less* inflammatory than the defendant's own conduct, which includes planting an IED targeting Israeli troops, attempting to murder an Israeli spy, and scoping out security vulnerabilities to maximize death and destruction in a future Hizballah attack on New York City landmarks and infrastructure. Furthermore, none of the materials that the Government anticipates offering at trial display graphic violence. Indeed, the Court has already concluded that "standing alone, the videos and the audio would not . . . have any substantial prejudicial effect." (Tr. 10). Any residual prejudice can further be cured by a limiting instruction to be read at the time the materials are admitted. *See United States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010) (noting that a limiting instruction minimized any possible prejudice arising from admission of pro-jihadist materials); *United States v. Pugh*, 162 F. Supp. 3d 97, 118 (E.D.N.Y. 2016), *aff'd*, 937 F.3d 108 (2d Cir. 2019) (same).

Additionally, the factors cited by the Court at the final pre-trial conference militate in favor of admission. (Tr. 8-9 ("As to Rule 403, courts in this circuit have identified two factors that should be taken into consideration when deciding to admit terrorist propaganda, such as the Hizballah-related material at issue here. First, courts are more likely to admit terrorist propaganda material when it bears a direct relationship to the allegations at issue in the trial. Second, where propaganda is introduced to show state of mind, courts will consider whether state of mind is at issue." (internal quotation marks omitted))). As an initial matter, the Hizballah propaganda depicted in GX 201, 202, and 205 "bear[] a direct relationship to the allegations at issue in the trial" in that the Hizballah propaganda videos glorify Southern Lebanese violence against Israeli troops, which the defendant admitted to participating in by spying on Israeli forces in Southern Lebanon, planting an IED targeting Israeli troops in the area, and attempting to shoot an Israeli spy. Similarly, the photographs of the Rally and the site of Hariri's assassination were taken by the defendant himself and, as noted above, corroborate the defendant's own admissions regarding

these events and his involvement in the organization at those times.  As to the second factor highlighted by the Court, the Hizballah Materials provide essential context for the defendant's state of mind in joining Hizballah and taking actions to further its terrorist aims.  That the defendant possessed these materials—which glorify the violent acts of militants like him who attacked the Israelis, and depict his presence at noteworthy Hizballah events and sites—is certainly relevant to the jury's evaluation of whether the defendant knowingly provided support to Hizballah and trained with the group.  And, while the defendant still has not made clear precisely what his defense at trial will be, he has alluded repeatedly to his argument that he was merely a "failed recruit" for Hizballah and that he was exaggerating in his interviews with the FBI.  (*See, e.g.*, Dkt. 166 at 3).[4] Any such argument—*i.e.*, that he did not knowingly provide material support to group—would place the defendant's state of mind even more at issue and further strengthen the basis for admitting this evidence under Rule 403.

Finally, the defendant's apparent willingness to stipulate that Hizballah is a designated foreign terrorist organization does not alter the Rule 403 calculus.  The defendant has not indicated a willingness to stipulate that he *knew* that Hizballah engaged in terrorist activity and terrorism, that he *knowingly* conspired, attempted, and provided material support and resources to the group, and that he *knowingly* received military-type training from Hizballah—all elements pertaining to his *mens rea* that the Government must prove at trial.  Moreover, even if the defendant did propose appropriate stipulations, the Government "is entitled to prove its case free from any defendant's option to stipulate the evidence away." *United States v. Aref*, 285 F. App'x 784, 791 (2d Cir. 2008) (quoting *Old Chief v. United States*, 519 U.S. 172, 189-90 (1997)); *see also United States v. Salameh,* 152 F.3d 88, 122 (2d Cir. 1998) (admitting photographs and testimony regarding the death and injury caused by the World Trade Center bombing as probative of the nature and location of the explosion even though defendants were willing to stipulate that the bombing caused death and injury).  Put simply, the defendant's knowledge of Hizballah's violent acts and ideology, his direct participation in a notable Hizballah rally, and his visiting of a Hizballah bombing site—as evidenced by the Hizballah Materials—provide essential context for the jury to understand the

---

[4] The Government also respectfully submits that this argument would run afoul of the defendant's statements to the Government in his post-arrest proffer sessions; namely, that he completed various tasks at Hizballah's behest over the course of years and received increasingly sensitive taskings over time, making him a full-fledged operative and not a "failed recruit."  As such, were the defendant to make such an argument, the Government would anticipate making an application to the Court, consistent with the Court's ruling on this point, to permit the Government to introduce relevant statements from the defendant's proffers to rebut this contention.  (*See* Tr. 12-14).

defendant's state of mind and are otherwise not unduly prejudicial. As such, the Court should permit the Government to introduce the Hizballah Materials at trial.

### III. Conclusion

For the foregoing reasons, the Court should grant the Government's motion *in limine* regarding the Hizballah Materials.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Sam Adelsberg
Jason A. Richman
Assistant United States Attorneys
(212) 637-2494 / 2589

cc:    Defense Counsel    (by ECF)