# Tseitlin Law Firm P.C.
345 Seventh Avenue, 21st Floor
New York, New York 10001

VIA ECF

April 13, 2022

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

**Memo Endorsement:** The Government will respond to this letter by April 18, 2022 at 10:00 a.m.

SO ORDERED.

*[signature]*

Paul G. Gardephe
United States District Judge
Dated: April 14, 2022

Re:   United States v. Alexei Saab, 19 Cr. 676 (PGG)

Dear Judge Gardephe,

Alexei Saab respectfully submits this motion to exclude the government's proffered expert witness from testifying at trial. In the alternative, the Court should hold a *Daubert* hearing at which the government must establish the admissibility of its proffered expert's opinions.

### Motion to Exclude the Proffered Expert Testimony of SABT Brian Murtagh

Pursuant to Federal Rule of Evidence 702, the Court must act as a "gatekeeper" for expert testimony to ensure that such testimony "both rests on a reliable foundation and is relevant to the task at hand."[1] Before admitting proffered expert testimony, the Court must conclude not only that such testimony is reliable, but also that it "fits" the facts of the case and will thereby assist the jury in understanding the evidence or some factual issue in dispute.[2]

Relevancy is determined by whether the proffered evidence "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."[3] Reliability is determined by considering if (1) "the testimony is based on sufficient facts or data"; (2) "the testimony is the product of reliable principles and methods"; and (3) "the

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004).
[2] *See Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.
[3] *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (internal quotation marks and citations omitted and alteration adopted).

1

expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Amorgianos*, 303 F.3d at 265(citing this standard).

With regard to reliability, a court must determine that the evidence is "sufficiently reliable so as to be admissible."[4] "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* at 267. "[I]t is critical that an expert's analysis be reliable at every step." *Id.* Even "[i]f the witness is relying solely or primarily on experience, [he still] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[5]

In addition, under Rule 703, if the facts or data relied upon by an expert are otherwise inadmissible, the expert may not disclose them to the jury unless the Court determines that their "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."[6] Rule 703 "provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and inadmissible for any substantive purpose, when that information is offered by the proponent of the expert."[7]

Expert testimony must also satisfy Rule 403 and may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."[8] As the Second Circuit has cautioned, "[t]he very breadth of the discretion according trial judges in admitting [expert opinions] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny. A trial judge should . . . weigh carefully the risk of prejudice."[9]

The government's expert disclosure related to Special Agent Bomb Technician ("SABT") Brian Murtagh of the FBI, dated November 22, 2021, states that the agent is to testify about his analysis of explosives diagrams allegedly drawn by Mr. Saab during Saab's interview with the FBI

---

[4] *Amorgianos*, 303 F.3d at 268.
[5] *Alto v. Sun Pharm. Indus., Inc.*, 2021 WL 4803582 (S.D.N.Y. Oct. 13, 2021) (internal quotation marks omitted) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010)).
[6] Fed. R. Evid. 703; *see also United States v. Long*, 917 F.2d 691, 702 (2d Cir. 1990) (holding that trial court erred in permitting expert testimony that was marginally relevant, not directly related to the case, substantially more prejudicial than probative).
[7] Fed. R. Evid. 703, 2000 Advisory Committee Note. Expert testimony that merely recites inadmissible hearsay is improper. *See, e.g., Plourde v. Gladstone*, 190 F. Supp. 2d 708, 720–21 (D. Vt. 2002) (finding expert opinion inadmissible when it "amounts to nothing more than inadmissible 'hearsay in disguise' under Rule 703"), *aff'd* 69 F. App'x 485, 487 (2d Cir. 2003); *see also* Charles A. Wright & Victor J. Gold, 29 FED. PRAC. & PROC. EVID. § 6273 (2d ed. April 2021 Update).
[8] Fed. R. Evid. 403; *see United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) ("Even if the testimony is admissible under Rule 702, it still must pass muster under Rule 403").
[9] *Nimely v. City of New York*, 414 F. 3d 381, 397 (2d Cir. 2005) (quotations omitted).

2

on March 21, 2019. Gov. Expert Ltr., Ex. A at 2. This notice, which also included SABT Murtagh's resume, states that he would "testify about his review of the diagram drawn by the defendant, and his opinion that they would have been viable explosive devices if constructed as diagrammed, and about his process for reaching his conclusion." Id. The government subsequently disclosed SABT Murtagh's report as part of the 3500 Material, which also included the diagrams. Gov. 3500 Doc. 3503-03 (pp. 1-2), 3503-02 (pp1-3), Ex. B.

As explained below, this witness should be excluded because the government's notice is deficient and the government has not met its burden of establishing admissibility under Daubert[10], Kumho[11], or Rule 702. The expert notice for the testimony of SABT Brian Murtagh is insufficient to show his qualifications as an expert in construction, or testing, of explosives based on diagrams. His opinions are vague and the report does not explicate adequate bases and reasons for the opinions formed.

SABT Murtagh has not testified as an expert before.[12] While defense does not contest his expertise in responding to investigations and calls for service, including those of improvised explosive devices (IEDs), and conducting operational Render Safe Procedures (RSP), collecting evidentiary items and forwarding evidence to the FBI Laboratory, his Curriculum Vitae lists no education or experience linked to constructing explosives from drawings or conducting testing of such devices.[13] He has not had any education or experience as a weapons engineer.[14] Indeed, SABT Murtagh did not conduct any testing in this case.

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government to provide a "written summary of [expert] testimony that the government intends to use" that "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The initial expert notice provided by the government relating to SABT Murtagh and his proposed testimony about the viability of explosive devices if constructed as diagrammed is insufficient because it met none of these criteria. This notice is insufficient to allow the defense to challenge or cross-examine this expert.[15]

SABT Murtagh's report repeats several factual statements attributed to Mr. Saab, which he gathered from the 302 reports made by Special Agent Anthony Cipriano and TFO Frank Miceli. Gov. 3500 Doc. 3512-11 at 1-3, Ex. C. The expert notice merely states SABT Murtagh's conclusion that these drawings "would have been viable explosive devices if constructed as

---

[10] *Daubert*, 509 U.S. at 591
[11] United States v. Kumho, 119 S. Ct. 1167 (1998)
[12] Ex. B at 3503-01
[13] Ex. B at 3503-04
[14] U.S. v. Fisher, 2002 WL 31571549, E.D. Penn. (01-cr-769)(firearms expert was qualified to render an opinion as to whether the condition was consistent with having been
[15] See *United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021) (noting that the "Advisory Committee notes to Rule 16 explain that [Rule 16's] disclosure requirement is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross- examination")

3

diagrammed" without any support as to how that opinion was reached. Gov. Expert Ltr., Ex. A at 2. It does not provide any reasons, bases, records, technical or scientific literature he relied upon. His resume states that in another case, he assisted in the "investigation and coordinating the building of a functional yet inert IED" but the report in the case at hand does not state whether any testing was done, and if testing was in fact conducted, fails to provide the results of any testing. It does not indicate whether he performed any validation techniques. Gov. Expert Ltr., Murtagh CV Ex. A at 3. SABT Murtagh has not constructed a prototype of a device based on the relevant drawings that could functionally test the viability of the explosive diagrams in a material way.[16]

Furthermore, SABT Murtagh does not detail what he means when he deems these devices "viable" or whether he, as an expert, can construct a viable device from these crude drawings or whether the practical application of such knowledge may also be attributable to Saab. The government does not explain what it plans to assert that these conclusory opinions demonstrate.[17] The government's proffered evidence therefore fails to satisfy the threshold of relevance as required by *Daubert*.

For these reasons, his testimony should be excluded. "Even if the disclosure provides a sufficient summary of any opinions to be offered by the witness, it may be excluded" if there is "no attempt at all to describe the bases and reasons for those opinions as required."[18]

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify in the form of an opinion when (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

In *Daubert*, the Supreme Court held that Rule 702 requires the trial judge to assume the role of "gatekeeper" with the task of ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. This Court must make a preliminary assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Id.* at 592–93.

To guide the assessment of the reliability of an expert's methodology, the Supreme Court has set out several factors to consider, including: whether the theory is based on scientific or other

---

[16] See, *U.S. v. Fisher*, 2002 WL 31571549 (E.D. PA) (unpublished op.) (exclusion of firearm expert's testimony where there was lack of any attempt to duplicate exact conditions present at time of accident involving firearm and the testimony did not reflect a degree of scientific certainty as to expert's ultimate opinion)

[17] No explosives or any Improvised Explosive Devices (IEDs), their components, nor any writing or drawings related to the mechanics of their assembly exist among the numerous electronic files seized from Ms. Saab's by the FBI.

[18] *United States v. Mahaffy*, No. 05 Cr. 613 (ILG), 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) (excluding expert testimony).

4

specialized knowledge that has been or can be tested; whether the theory has been subjected to peer review; the known or potential rate of error and the existence of standards controlling the theory's operation; and the extent to which the theory is generally accepted in the relevant community. *Id.* at 593–94.

SABT Murtagh's testimony does not meet any of these requirements. His theory is based on pure conjecture and has not been tested using acceptable methodology. He articulated no standards that are used in the relevant community of experts and whether those standards are reliable.

SABT Murtagh claims he had his findings "peer assessed" by "Jones Lyle," presumably another FBI agent, and that "Lyle agreed,"[19] but does not identify any peer review process and what methodology it has undergone. Defense received no information on Lyle Jones' credentials to conduct such a peer review. Thorough peer review typically centers around publications that are vetted by the appropriate community of expertise and held up to rigorous standards, especially where methodology is concerned. SABT Murtagh's "peer review" consists of soliciting the opinion of only one other agent, whose qualifications were not shared with the defense. SABT Murtagh's testimony should therefore not be considered as meeting the standards of a rigorous peer review because there exist no maintenance of standards controlling the technique's operation or whether the method is generally accepted, or the qualifications of the expert witness testifying based on methodology and the non-judicial uses to which the method has been put.

Further, SABT Murtagh will impermissibly rely on inadmissible hearsay, namely, the conclusions of Lyle Jones, if SABT Murtagh is allowed to testify that his conclusion was peer reviewed by Lyle Jones. Therefore, SABT Murtagh's proposed testimony also poses Confrontation Clause issues under *Crawford v. Washington,* 541 U.S. 36 (2004).[20]

Additionally, when the expert bases his opinion on in-court testimony of fact witnesses, such as the case agents here, such testimony may improperly bolster that testimony and may "suggest[ ] to the jury that a law enforcement specialist ... believes the government's witness[ ] to be credible and the defendant to be guilty, suggestions we have previously condemned."[21]

However, the *Daubert* factors are "meant to be helpful, not definitive," and the trial court retains the discretion to determine how to evaluate an expert's reliability on a case-by-case basis.[22] The principal consideration is whether the evidence is sufficiently reliable for presentation to the jury through expert testimony.

---

[19] *Id.*
[20] See, *United States v. Mejia,* 545 F.3d 179, 199 (2d Cir. 2000)(the Mejia Court held that where an expert witness merely repeats out-of-court statements made by others for their truth, without applying expertise or any expert synthesis, the testimony raises *Crawford* concerns).
[21] *United States v. Cruz,* 981 F.2d 659, 663 (2d Cir.1992) (citing *United States v. Scop,* 846 F.2d 135, 139–43 (2d Cir.1988)).
[22] *Kumho Tire* at 151–52.

5

Rule 104(c) of the Federal Rules of Evidence requires the Court to conduct an evidentiary hearing on whether a witness is qualified or evidence is admissible when "justice so requires." The Second Circuit has stated that *Daubert* hearings are "highly desirable to enable the parties to present expert evidence and to test credibility through cross examination."[23] A hearing is particularly necessary where, as here, the government has failed to provide sufficient information about its expert's conclusions and how they reached them.

Additionally, the Court should exclude an expert's testimony under Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Expert testimony risks violating Rule 403 because it can be powerful and misleading, and thus difficult to evaluate.[24] We respectfully reserve the right to expand on this Rule 403 argument once we know more about the nature of SABT Murtagh's testimony.

In conclusion, the Defense respectfully requests that the Court exclude the proffered testimony of SABT Murtagh.

Sincerely,

s/

Alexandra Tseitlin

cc: Jason Richman, Assistant United States Attorney (via electronic mail)
cc: Samuel Adelsberg, Assistant United States Attorney (via electronic mail)
cc: Marlon Kirton, Esq. (via electronic mail)
cc: Esere Onaodowan, Esq. (via electronic mail)

---

[23] *Borawick v. Shay*, 68 F.3d 597, 608 (2d Cir. 1995); *see also Dover v. British Airways, PLC*, No 12 Civ. 5567 (RJD), 2017 WL 2480898, at *7 (E.D.N.Y. June 5, 2017).

[24] *See Daubert*, 509 U.S. at 595; *e.g., United States v. Nieves*, No. 19 Cr. 354 (JSR), 2021 WL 1535338, at *1 (S.D.N.Y. Apr. 18, 2021)

6