UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

ALEXEI SAAB,
      a/k/a "Ali Hassan Saab,"
      a/k/a "Alex Saab,"
      a/k/a "Rachid,"

                    Defendant.

19 Cr. 676 (PGG)

# GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S
# MOTION TO PRECLUDE THE TESTIMONY OF EXPERT WITNESS BRIAN
# MURTAGH OR FOR A *DAUBERT* HEARING

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Sam Adelsberg
Jason A. Richman
Assistant United States Attorneys
- Of Counsel -

On April 13, 2022, the defendant filed a motion (Dkt. 187, the "Def. Mot.") seeking to preclude the testimony of Federal Bureau of Investigation ("FBI") Special Agent Bomb Technician ("SABT") Brian Murtagh, the Government's proposed expert witness on improvised explosive devices ("IEDs") and, in the alternative, for a *Daubert* hearing regarding his proposed testimony.   SABT Murtagh's proposed testimony, further detailed below, is limited to his evaluation of three IED schematics drawn by the defendant during pre-arrest interviews with the FBI, which SABT Murtagh evaluated to be viable IEDs if constructed as drawn.   While admitting that SABT Murtagh may be an expert regarding certain aspects of IED-related investigations, the defendant argues that: the Government's expert notice is inadequate; SABT Murtagh fails to explain the bases for his opinions or his methodology; SABT Murtagh impermissibly relies on hearsay; and Rule 403 may be violated by his testimony.   For the reasons to follow, the defendant's arguments are without merit, and the Court should deny this motion without a hearing.

**I.  Relevant Facts**

On July 8, 2019, the Government filed a Sealed Complaint (the "Complaint") charging the defendant in nine counts.  (Dkt. 1).  As the Complaint details, and as the Government will prove at trial through the testimony of at least one of the case agents involved in this investigation, the defendant participated in a series of pre-arrest interviews with the FBI during which he admitted his Hizballah membership and years of operational activity on behalf of Hizballah.  Among other things, the defendant admitted that he participated in training led by his Hizballah handling agents, including training in counter-surveillance, intelligence, and the use of firearms and explosives. (Compl. ¶ 21).  Relevant to this motion, the Complaint outlines that the defendant participated in multiple days of explosives training involving the creation and detonation of explosive devices, including IEDs.  (*Id.* ¶ 21(e)-(n)).  Indeed, the defendant admitted that he once constructed a "sticky bomb" that he then tested in the mountains outside of Beirut.  (*Id.* ¶ 21(l)).  The defendant further

explained that the "sticky bomb" he created was connected to wires with a metal tube attached, and then plugged with C-4 explosives.[1]  (*Id.*).  As the defendant described, his training on IEDs was an essential component of his Hizballah training and purpose in the organization; he was taught to be a "lone wolf" operative as a member of Hizballah's External Security Organization, capable of scouting, planning, and carrying out an attack without the assistance of other Hizballah members. During one of the interviews, the defendant diagrammed three of the IEDs that Hizballah taught him to construct:

Explosive 1          Explosive 2          Explosive 3



(*Id.* ¶ 21(m)).  As also outlined in the Complaint, SABT Murtagh evaluated the three IEDs diagrammed by the defendant and prepared a report concerning the same.  (*See id.* ¶ 23; *see also* Exhibit A, SABT Murtagh's report).   In particular, SABT Murtagh concluded that: Explosive 1 was a viable victim-actuated device, designed to detonate when action was taken by a potential victim; Explosive 2 was another viable victim-actuated device, designed to detonate when the briefcase holding the device was lifted off the surface by a potential victim; and Explosive 3 was

---

[1]  C-4 or Composition C-4 is a common variety of the plastic explosive family known as Composition C, which uses RDX as its explosive agent.

a viable improvised explosive device, meaning command initiated and able to detonate on a time delay. (Compl. ¶ 23). These conclusions—disclosed to the defendant almost three years ago in the Complaint—mirror the anticipated testimony that SABT Murtagh will provide at trial.

On November 22, 2021, the Government provided the defendant with notice, pursuant to Rule 16(a)(1)(G), of its intent to call SABT Murtagh to testify about his analysis of the three IEDs drawn by the defendant during his pre-arrest interviews with the FBI. (*See* Nov. 22, 2021 Expert Notice, attached as Exhibit B). The Government informed the defense that SABT Murtagh was going to testify "about his review of the diagrams drawn by the defendant, and his opinion that they would have been viable explosive devices if constructed as diagrammed, and about his process for reaching this conclusion." (*Id.* at 2). In serving that notice, the Government attached SABT Murtagh's *curriculum vitae*, which detailed his extensive qualifications. (*See* Murtagh *Curriculum Vitae*, attached as Exhibit C). As detailed in Exhibit C, SABT Murtagh has served as an FBI SABT since approximately 2015. (Ex. C at 1). In this capacity, among other things, he participates in investigations involving IEDs and conducts render safe procedures (wherein he disarms active explosive devices at the scenes of potential attack) in conjunction with local, county, and state bomb squads. (*Id.* at 1). In addition, he conducts training on IED render safe procedures and post blast investigator training for local, state, and county bomb squads. (*Id.*). Since June 2020, SABT Murtagh has also served as a Weapons of Mass Destruction stabilization team leader. (*Id.*). In this additional capacity, he supports all FBI investigations dealing with explosives and IEDs in the New York City division and participates in international investigations involving the same. (*Id.*).

Prior to his role as an SABT, SABT Murtagh worked as a Special Agent with FBI Joint Terrorism Task Force squad CT-4, which focuses on international terrorism and, in particular, the

Afghanistan / Pakistan region.  (*See id.*).  In his role on CT-4, SABT Murtagh was involved in, among other things, the investigation underlying *United States v. Nafis*, which resulted in a 30-year sentence in the Eastern District of New York for the defendant's participation in a plot to bomb the Federal Reserve.  (*See United States v. Nafis*, 12 Cr. 720 (CBA), Dkt. 42).  Prior to joining the FBI, SABT Murtagh was a commissioned officer in the United States Army, 82nd Airborne Division, at Fort Bragg, North Carolina.  (*See* Ex. B at 1).  In this role, among other things, he was responsible for leading and training airborne paratroopers in combat to Iraq and Afghanistan.  (*Id.*).  While in the United States Army, SABT Murtagh was himself deployed to Iraq in or about 2007.  In Iraq, SABT Murtagh patrolled for IEDs and other explosive devices, and was himself wounded by an IED attack in 2007.

In connection with his role as a SABT, SABT Murtagh has undergone extensive training, as detailed in his *curriculum vitae* and in other Jencks Act materials provided to the defendant in advance of trial.  Among other things, SABT Murtagh has completed over 1,100 hours of training in connection with his role as a bomb technician, in addition to general FBI training.  Classes he has taken include immediate action drills (involving the response to a potential attack or threat); render safe programs (involving the identification and de-escalation of an explosive device in the field); intermediate and advanced electronics courses (involving the evaluation of circuits and IEDs for whether they are viable devices); and advanced "IED defeat" courses, which focus on how to prevent IEDs from exploding.  SABT Murtagh has also participated in approximately 250 hours of courses focused on electronics, which in large part involve the evaluation of schematics of IEDs for whether they are viable devices, analogous to the testimony that SABT Murtagh will provide at trial.

SABT Murtagh also regularly serves as an instructor, training other individuals in the

subjects of his anticipated testimony.  More specifically, SABT Murtagh is an assistant instructor for intermediate electronics courses and annually certifies other individuals in post-blast investigations.  Both of these roles involve the skills and evaluation methods underlying his anticipated testimony.  Regarding the former, SABT Murtagh helps teach other law enforcement personnel about IEDs.  The class focuses on, among other things, schematics of IEDs and understanding how IEDs are wired.  SABT Murtagh assists in the teaching of others regarding how to read and evaluate such schematics, and understand if they constitute viable IEDs. Regarding the latter, SABT Murtagh certifies individuals in evaluating exploded devices to determine what components remain after a blast and other aspects of an IED before it exploded. This, too, involves the evaluation of whether an IED with certain components would have been viable, and what component parts it may have been missing.

Finally, SABT Murtagh has both reviewed publications concerning the evaluation of IEDs and discussed with other FBI SABTs the methods and metrics underlying his analysis in this case. More specifically, SABT Murtagh has read the relevant literature, textbooks, and periodicals about IED evaluation in connection with his coursework (and teaching) and has talked to other SABTs at the FBI and elsewhere about their own processes and procedures.  All of this work has confirmed that SABT Murtagh's methods are those used by other professionals in his field.  In addition, another FBI SABT, SABT Lyles, reviewed SABT Murtagh's methods and conclusions in this case, and came to the same determination as SABT Murtagh regarding the viability of the IEDs drawn by the defendant.  *See, e.g.*, *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert* and noting that peer review is a relevant factor in analysis).

The defendant now moves to preclude SABT Murtagh from testifying, arguing that (1) the Government's expert notice is insufficient; (2) the Government has not adequately outlined the

methods underlying SABT Murtagh's conclusions regarding the IED diagrams or what his conclusions mean; (3) SABT Murtagh improperly relies on hearsay; and (4) depending on the particulars of his testimony, it may run afoul of Rule 403.[2]  In the alternative, the defendant argues that the reliability of SABT Murtagh's methods and his qualifications must be tested at a hearing under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The defendant is wrong on all counts.  Because SABT Murtagh has specialized knowledge that will assist the jury in understanding the evidence and determining key facts in dispute, and because the probative nature of his testimony outweighs any potential prejudice, his testimony should be admitted.  A *Daubert* hearing is neither required nor warranted in this case, and the Government has provided ample notice of SABT Murtagh's anticipated testimony.

## II.  Applicable Law

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party that proffers expert testimony bears the burden of showing that it is admissible.  *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

---

[2] The defendant filed this motion on April 13, 2022—less than one week before the scheduled start of jury selection.  (Dkt. 187).  The defendant has known SABT Murtagh's conclusions for almost three years (from the filing of the Complaint in July 2019) and has had notice from the Government of its intent to call him as an expert witness at trial for almost five months.  In addition, the parties filed their motions *in limine* in December 2021.  The defendant did not challenge SABT Murtagh's testimony *in limine*, despite the trial then being scheduled to begin in January 2022.

A threshold issue is whether the witness "is qualified to be an 'expert'" in the subject matter at issue. *See Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). "In assessing whether a witness can testify as an expert, courts have liberally construed the expert qualification requirement." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369 (LTS), 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006). Analyses of expert qualifications typically proceed in two parts. Courts "first ascertain whether the proffered expert has the educational background or training in a relevant field" to qualify as an expert. *Cary Oil Co. v. MG Refining & Mktg., Inc.*, No. 99 Civ. 1725 (VM), 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003). Courts then "compare the expert's area of expertise with the particular opinion the expert seeks to offer." *Id.*

In keeping with the "liberal" construction of the expert-qualification requirement, courts in this Circuit have emphasized that an expert "should not be required to satisfy an overly narrow test of his own qualifications." *Johnson & Johnson*, 2006 WL 2128785, at *5. "If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *In re Zyperxa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007). That is because, in considering qualifications, the "only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." *Johnson & Johnson*, 2006 WL 2128785, at *5. Other "[q]uibbles with an expert's academic training" go to weight, not admissibility. *United States v. Joseph*, 542 F.3d 13, 21-22 (2d Cir. 2008).

The trial court must also find that the proposed testimony is both relevant and reliable prior to admitting it into evidence. *Daubert*, 509 U.S. at 589-90; *Kumho Tire Co., Inc. v. Carmichael*,

526 U.S. 137, 141 (1999).  Specifically, the trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  Applying Rule 702, the Court must determine whether the expert's reasoning and the methodology underlying his or her testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury.  *See Kumho Tire Co.*, 526 U.S. at 148-49.

The Second Circuit has also consistently held that expert testimony can be helpful to "shed light on activities not within the common knowledge of the average juror."  *United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("[E]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts. Because of their specialized knowledge, their testimony can be extremely valuable and probative . . . .").  This standard requires a "common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."  *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993).

As with all evidence, courts may only exclude the evidence under Rule 403 if the probative value of the evidence is "*substantially* outweighed by the danger of unfair prejudice."  *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) (emphasis added).  Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).  All relevant evidence is to some degree prejudicial; *unfair* prejudice means, however, an "undue tendency to suggest decision on an improper basis, commonly, though

not necessarily, an emotional one." Rule 403, Advisory Comm. Note. Evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999).

Finally, a district court is not required to hold a formal *Daubert* hearing prior to qualifying an expert witness. *See United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) ("While the gatekeeping function requires the district court to ascertain the reliability of [the expert's] methodology, it does not necessarily require that a separate hearing be held in order to do so."). Rather, the admission of expert testimony pursuant to Rule 702 is satisfied "if, at the time the expert testimony is presented to the jury, a sufficient basis for allowing the testimony is on the record." *Id.* (citing 4 Weinstein's Federal Evidence § 702.02[2] (2d ed. 2006)).

### III.  The Court Should Deny the Defendant's Motion to Preclude the Testimony of SABT Murtagh

The defendant's challenges to SABT Murtagh's proposed testimony should be denied. As detailed below, the proposed testimony is very limited and closely hewed to the other evidence in this case; namely, to three diagrams drawn by the defendant, which the defendant himself identified as operable IEDs he learned to construct and detonate. SABT Murtagh will confirm this admission. Furthermore, the highly probative nature of SABT Murtagh's testimony outweighs any potential prejudice, particularly in light of the relatively benign nature of SABT Murtagh's analysis compared to the other evidence in this case. This is particularly true given the highly probative nature of the evidence. The testimony is directly relevant to the Government's burden on Counts One, Two, and Four of the Indictment, as the fact that the defendant—a former software engineer at a tech company—was able to sketch out three operable IEDs makes it more probable that the defendant received training in the same from Hizballah. SABT Murtagh—whose experience and expertise qualify him to be an expert on IEDs, including on the evaluation of IED

schematics—will also rely upon a commonly accepted methodology, employed by SABT Murtagh and other local, state, and federal bomb examiners in similar roles, and taught by SABT Murtagh to his own students.  Finally, the Government has provided ample notice of SABT Murtagh's anticipated testimony and a *Daubert* hearing is unwarranted in this case.

### A. SABT Murtagh's Limited Proposed Expert Testimony Closely Hews to the Evidence

SABT Murtagh's proposed testimony is both limited in nature and closely hewed to the other evidence in this case.  SABT Murtagh evaluated three IED diagrams drawn by the defendant in his pre-arrest interviews with the FBI.  He prepared a two-page report, detailing his conclusions about the types of IEDs the defendant drew and their viability as explosive devices.  His proposed testimony will closely align to the conclusions in this report—namely, that all three IEDs diagrammed by the defendant would be operable if constructed as diagrammed.

In total, the Government anticipates that his testimony on direct examination will be no longer than 45 minutes and structured as follows.  The Government anticipates that SABT Murtagh will first testify as to his employment history, training, and experience, to establish that he is an expert in the construction and evaluation of IEDs.  This testimony will mirror that outlined above, starting with SABT Murtagh's time at the United States Military Academy and continuing to his present role as an SABT at the FBI.

SABT Murtagh will then turn to the method he used (and his peers use) in evaluating the three IEDs drawn by the defendant.  In particular, SABT Murtagh will explain that his method in analyzing diagrams of IEDs—like those drawn by the defendant—mirrors the method he uses in analyzing IEDs in the field or laboratory, as he has done hundreds of times.  Namely, he looks for four components of an IED (or schematic of an IED) to determine if it is viable—whether it has a power source, initiator, explosive, and switch (also known by its acronym, the "PIES" method). SABT Murtagh will then apply the PIES method of evaluation to the three diagrams drawn by the

defendant and will evaluate whether they are viable[3] devices as drawn.  He will explain how each of the three IEDs drawn by the defendant has all four essential components and how, if they were constructed as diagramed, they would be viable IEDs.

### B.   The Proposed Testimony Complies with Rules 401, 403 and 702

The proposed testimony complies with Rules 401 and 702.  SABT Murtagh's proposed testimony on the specified topics is directly relevant to issues at trial and will help the jury understand the defendant's military training and activity in support of Hizballah.  The fact that the defendant was able to draw three operable IEDs—over 15 years after he was trained to construct them—is direct, powerful proof that he received this training from Hizballah, which is relevant to Counts One, Two, and Four.  This testimony also corroborates the anticipated testimony concerning his admissions to the FBI concerning the same.  SABT Murtagh, with his extensive experience with IEDs and reviewing schematics like those drawn by the defendant, is thus uniquely well-positioned to provide "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."  *See* Fed. R. Evid. 702(a).  Namely, whether the defendant actually received the training in IEDs that he admitted to the FBI he had received.  Thus, Rules 401 and 702 are satisfied.

Regarding unfair prejudice, the defendant purports to "reserve the right to expand on" his Rule 403 argument "once we know more about the nature of SABT Murtagh's testimony."  (Def.

---

[3] The defendant takes issue with the use of the word "viable" in the Government's expert notice and claims that SABT Murtagh does not "detail what he means" in using the word.  (Def. Mot. at 4).  The Government anticipates that SABT Murtagh will explain that "viable" in this setting has its normal, everyday meaning—that it is "capable of working, functioning, or developing adequately."  *See* Merriam-Webster Dictionary, "viable," *available at* https://www.merriam-webster.com/dictionary/viable.  Further, SABT Murtagh's report concludes that he assessed the three IEDs to be "electric fuzing systems for use as potential destructive devices, " which provides the defendant with additional notice as to the meaning of "viable" in SABT Murtagh's conclusions. (Ex. A at 1).

Mot. at 6).  Putting aside that the defendant is fully aware of the extent of SABT Murtagh's limited testimony, and has been for years, there is no Rule 403 issue at play.  In this case, the jury will hear testimony about the defendant's own admissions concerning his training and experience constructing and detonating IEDs.  Testimony establishing that three IEDs drawn by the defendant were viable explosive devices, after the defendant admitted to the FBI that he learned to construct such devices, is significantly less prejudicial and sensational than the crimes charged and the defendant's own admissions on this score.  *See, e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 132-34 (2d Cir. 2010) (affirming district court's admission of excerpts of jihadist propaganda videos including graphic combat scenes); *United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) (per curiam) (affirming district court's admission, over a Rule 403 objection, of video depicting embassy bombing and materials that "bristled with strong anti-American sentiment and advocated violence against targets in the United States," in light of their probative value).  Indeed, the Government anticipates testimony at trial concerning the defendant's efforts to locate the optimal locations for Hizballah to bomb in the United States, including various landmarks in New York City and elsewhere.  As the defendant admitted to the FBI, his goal in these efforts was to prepare Hizballah to maximize death and destruction in any future attack.  And the jury will also hear testimony about the defendant's attempt to murder a suspected Israeli spy, and his successful mission to plant an IED in Lebanon targeting Israeli troops.  Given the highly probative nature of SABT Murtagh's proposed expert testimony, and the minimal prejudice, particularly as compared to the other evidence in this case,  the Court should reject the defendant's arguments under Rule 403.

**C.  SABT Murtagh is Qualified to Testify as an Expert Witness on his Evaluation of the IED Schematics Drawn by the Defendant**

The defense disputes SABT Murtagh's qualifications as an expert witness on the testimony proposed by the Government.  Notably, as an initial matter, defense counsel concedes that SABT Murtagh has "expertise" in certain aspects of IED-related investigations.  (*See* Def. Mot. at 3 (admitting that the "defense does not contest [SABT Murtagh's] expertise in investigations and calls for service, including those of improvised explosive devices (IEDS), and conducting operational Render Safe Procedures (RSP)" among other things).  Contending otherwise would ignore SABT Murtagh's years of training and experience and his own role as an instructor of others.

Rather, defense counsel's challenge to SABT Murtagh's qualification is narrower: they claim that while he may be qualified to testify about certain things involving IEDs themselves, he is not qualified to testify about the analysis of drawings of IEDs.  This argument fails for a simple reason: SABT Murtagh's indisputable qualifications as an expert on IEDs qualify him to testify about schematic drawings of the same.  Indeed, given the nature of his expertise—bombs—SABT Murtagh, like other explosives experts, regularly work with schematics, drawings, or models of explosive devices when not in the field.  *United States v. Khalil*, 214 F.3d 111, 122–23 (2d Cir. 2000) (affirming the  admission of expert testimony about a "mock-up bomb replicating those made by [the defendant]"); *United States v. Waters*, 96 F.3d 1449 (6th Cir. 1996) (noting that an "expert identified the diagram as a drawing of a bomb similar to the one first sent to the City-County Building").  In any event, given SABT Murtagh's qualifications as an expert on IEDs, there is no legal requirement that his experience be any more closely tailored to his proposed testimony.  Indeed, proposed experts are not "required to satisfy an overly narrow test of [their] own qualifications."  *Johnson & Johnson*, 2006 WL 2128785, at *5.  Moreover, as another court

in this District recently noted, "the Second Circuit has rejected exclusion of experts based solely on an expert's lack of experience with a specific system." *Alto v. Sun Pharm. Indus., Inc.*, No. 19 Civ. 9758 (GHW), 2021 WL 4803582, at *5 (S.D.N.Y. Oct. 13, 2021). Rather, the case law is clear that if an expert is qualified "in a general field closely related to the subject matter in question," courts do not exclude witnesses for lacking "expertise in the specialized areas that are directly pertinent." *In re Zyprexa*, 489 F. Supp. 2d at 282 (Weinstein, *J.*); *see Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997) (holding that district court abused its discretion in precluding expert witness where the witness possessed sufficient experience related to general area, but not to specific question before trier of fact); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 447 (S.D.N.Y. 2016) ("An expert need not be precluded from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute."); *Sullivan v. Ford Motor Co*., No. 97 Civ. 593, 2000 WL 343777 (RCC), at *4 (S.D.N.Y. Mar. 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion."). In some respects, the defendant's claim is that SABT Murtagh is *over*-qualified for his testimony—he is clearly an expert in dealing with IEDs in the field, but the defense argues that this does not make him an expert in evaluating IEDs in a courtroom. This is plainly incorrect and belied by precedent in this District. *See In re Fosamax Prods. Liab. Litig.*, 688 F.Supp.2d 259, 268 (S.D.N.Y. 2010) (finding proposed expert to be qualified because "[h]e has practiced dentistry for over 30 years; he specializes in oralfacial pain and maxillofacial radiology; he keeps up to date with the developments in research regarding [the medical condition in question] and has given presentations on the issue; he also has practical experience in that he has treated many patients" with the condition in question); *Zerega Ave. Realty Corp. v. Hanover Ins. Co.*, No. 04 Civ. 9651

14

(KNF), 2006 WL 1343643, at *4 (S.D.N.Y. May 17, 2006) (permitting testimony from a witness with "hands-on experience" to testify about reviewing diagrams, among other things).

Notably, the defendant glosses over the fact that practically all of SABT Murtagh's training and experience in the analysis of IEDs is directly relevant to his testimony at trial. As the Government anticipates SABT Murtagh will explain, the method he used in evaluating the defendant's schematics is entirely consistent with the method he employs in analyzing IEDs in the field or laboratory, and the method of analysis he now teaches to other bomb technicians around the country. In addition, even if SABT Murtagh did not have training or a formal background in the evaluation of IEDs—and he does, to the tune of over 1,100 hours of training—his experience studying, analyzing, and evaluating IEDs—and the diagrams of IEDS—provide an independent basis for finding him qualified to testify as an expert. Indeed, "one may be an expert solely based on one's practical experience notwithstanding a lack of professional education[.]" *Johnson & Johnson*, 2006 WL 2128785, at *5; *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) ("Fuller's argument ignores Woolley's extensive practical experience . . . . Woolley's background and practical experience qualify as 'specialized knowledge' gained through 'experience, training, or education,' Fed. R. Evid. 702, and his testimony was properly admitted."). In short, SABT Murtagh's extensive practical experience with IEDs, including but not limited to the over 20 IED-related investigations identified in his *curriculum vitae*, qualifies him to testify as an expert on IEDs.

Finally, the defendant also contends that SABT Murtagh's testimony should be precluded, or a hearing held, because the Government had not provided an adequate explanation of the methods underlying SABT Murtagh's process. This, too, is incorrect. The Government has disclosed in 3500 material that SABT Murtagh employs the "PIES" method outlined above, which

is the backbone of his testimony and will form the basis for how he will explain his analysis to the jury.  (*See* 11/19/2021 notes, attached as Exhibit D).  Further, SABT Murtagh's report, also disclosed to the defendant months ago, explains exactly how SABT Murtagh evaluated each of the three IED diagrams and arrived at his conclusions.  The defendant appears to be arguing that there is some analysis missing from the report and Jencks Act material or that the Government and SABT Murtagh have failed to provide the defendant with crucial details regarding SABT Murtagh's evaluation methods.  This is false, notwithstanding the defendant's complaints to the contrary.  As SABT Murtagh will explain, his PIES method of analysis is the accepted method by bomb technicians at the FBI and elsewhere, both in evaluating IEDs in the field and those drawn in schematics like the defendant drew in this case.  The defense is thus on adequate notice regarding his methodology, which is generally accepted in his field.   As this Court has noted, "expert testimony should be excluded only if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges comparison.  Other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of [expert evidence]."  *Sec. & Exch. Comm'n v. Aly*, No. 16 Civ. 3853 (PGG), 2018 WL 1581986, at *17 (S.D.N.Y. Mar. 27, 2018) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (cleaned up); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 459 (S.D.N.Y. 2007) (defendant's argument that survey was unreliable due to "methodological and implementation errors" went to the weight of the expert testimony, not its admissibility).  To the extent the defense quibbles with SABT Murtagh's methodology, that can be explored on cross-examination and is not a basis to preclude his otherwise plainly admissibly testimony.

Accordingly, SABT Murtagh is qualified to testify as an expert on IEDs and his evaluation of the defendant's IED schematics, and the Government has provided the defendant with adequate

16

materials to challenge his testimony at trial.

### D. SABT Murtagh's Proposed Expert Testimony Does Not Impermissibly Rely on Inadmissible Hearsay

The defendant next seeks to preclude SABT Murtagh's testimony on the grounds that his testimony will "impermissibly rely on inadmissible hearsay," namely, the testimony of the second SABT who peer reviewed his conclusions, Jim Lyles.  (Def. Mot. at 5).   In addition, the defendant opaquely argues that SABT Murtagh will also be basing his opinions on "in-court testimony of fact witnesses," the case agents in this case.  (*Id.*).  This is simply not the case.

As a preliminary matter, the Government does not intend to elicit testimony from SABT Murtagh concerning the conclusions of SABT Jones (which were that he agreed with SABT Murtagh's analysis based on his own review) absent cross-examination or argument that opens the door to such testimony.  Thus, any concern about hearsay testimony will be obviated.  Furthermore, regardless of whether some of SABT Murtagh's testimony might be considered hearsay, "[u]nder Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably rely on such evidence in forming their opinions."  *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (internal quotation marks omitted).  To the extent the Government were to elicit this testimony, it anticipates that SABT Murtagh would testify that it is common practice in the field of IED evaluation to have another SABT or similar professional review one's conclusions, as SABT Jones did in this case.   Further, "it is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others."  *Howard v. Walker*, 406 F.3d 114, 127 (2d. Cir. 2005).  In fact, the Second Circuit has approved expert testimony rooted in hearsay in other contexts.  *United States v. Farhane*, 634 F.3d 127, 158-59 (2d Cir. 2011)  (affirming admission of expert testimony regarding al Qaeda, where information was partly derived from hearsay sources); *United States v. Locascio*, 6 F.3d 924, 938

17

(2d Cir. 1993) (noting that "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions").

Regarding the defendant's second argument, SABT Murtagh will not be testifying about any statements from the case agents. As relevant to the case agents, SABT Murtagh will testify (a) he was involved in the investigation of the defendant and (b) asked to evaluate the IED diagrams by the case agents in this case. Neither of these statements, however, would be offered for the truth or are at all substantive; they are merely background questions to explain why SABT Murtagh carried out his analysis. *See* Fed. R. Evid. 801(c)(2). The statements certainly do not "improperly bolster" the case agents' testimony, as the defendant suggests. (Def. Mot. at 5). To the extent the defendant is arguing that the diagrams themselves somehow implicate the hearsay rules, they are, of course, statements by the defendant himself and thus excluded from the definition of hearsay altogether. *See* Fed. R. Evid. 801(d)(2).

Accordingly, the defendant's motion to preclude SABT Murtagh's testimony on hearsay grounds should be denied.

### E.  The Government Has Provided Adequate Notice of SABT Murtagh's Testimony

The Government's disclosures regarding SABT's Murtagh proposed testimony, including the additionally detailed information supplied in Jencks Act material and in this opposition, satisfy the requirements of Rule 16(a)(1)(G). The Government's disclosures are more than sufficient to ensure that "the proposed testimony [will not be] a surprise." *United States v. Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364, at *4 (S.D.N.Y. Nov. 14, 2014). The Government has disclosed the specific topics of SABT Murtagh's expected testimony, his qualifications, and a description of the bases for his knowledge. The defendant has had access to SABT Murtagh's conclusions since his arrest, and the report underlying these conclusions for months. Further detail was provided to

18

the defendant in Jencks Act material produced in advance of the first trial date in this matter in January 2022.  The fulsome preview of SABT's testimony provided above, in particular, renders the defendant's request for further disclosures moot.  The Government's disclosures regarding SABT's proposed testimony are extensive and detailed, and easily meet the requirements of Rule 16(a)(1)(G).

### F.  A *Daubert* Hearing Is Not Required

For similar reasons, there is no basis or need for a *Daubert* hearing in advance of qualifying SABT Murtagh to testify as an expert on the limited subjects set forth above.  SABT Murtagh's ability to testify reliably as an expert on these squarely relevant topics is apparent and requires no additional probing.  The Supreme Court has emphasized that while a district court must serve its gatekeeping function, a court also "must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152 (noting that the "abuse of discretion" standard "applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion" because "[o]therwise, the trial judge would lack the discretionary authority needed . . . to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted"); *see Williams*, 506 F.3d at 161 (in a case involving ballistics expert testimony, holding that "[w]hile the gatekeeping function requires the district court to ascertain the reliability of [the expert's] methodology, it does not necessarily require that a separate hearing be held in order to do so"); *Kewazinga Corp. v. Microsoft*, No. 18 Civ. 4500 (GHW), 2021 WL 4066597, at *2 (S.D.N.Y. Sept. 1, 2021) ("The formality of a separate hearing is not always required for a district court to effectively fulfill[ ] its gatekeeping function under *Daubert*." (internal quotation marks omitted)).

SABT Murtagh's methods—while particularized and technical—are not so complex as to require a hearing outside the presence of the jury. Instead, they are rooted in accepted methodology used by the FBI and others, and he is qualified in his field that he now teaches others regarding the same. In short, the Government respectfully submits that SABT Murtagh's credentials and methods may be evaluated in light of his extensive *curriculum vitae* and in conjunction with the foundation the Government will lay in qualifying him as an expert before the jury; this will provide an adequate foundation for the Court to find that his testimony may be admitted pursuant to Rule 702. *See Williams*, 506 F.3d at 161-62 (upholding denial of *Daubert* hearing where the court considered the use of similar testimony in other cases, and the Government provided a thorough foundation prior to presenting expert's testimony to the jury); *United States v. Smalls*, 719 F. App'x 83, 86 (2d Cir. 2018) (affirming district court's decision to forego *Daubert* hearing because the district court "ascertained the police detective's expertise and reliability"); *United States v. Hossain*, No. 19 Cr. 606 (SHS), Dkt. No. 158 at 13-21 (S.D.N.Y. Sept. 29, 2021) (declining to hold *Daubert* hearing for expert witness on the Taliban and noting that "as long as [the defendant has] a valid, that is, a correct statement from the government of what the areas [of testimony] are, a so-called *Daubert* hearing here would simply be two bites at the apple"); *United States v. Schulte*, No. 17 Cr. 548 (PAC) (S.D.N.Y. 2020), Dkt. No. 256 at 4 (admitting without a *Daubert* hearing the testimony of expert on WikiLeaks who had not previously testified in federal court as "appropriate under FRE 702").

For all the above reasons, SABT Murtagh's testimony should be admitted without a *Daubert* hearing.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's motion.

Dated:  New York, New York
    April 18, 2022

            Respectfully submitted,

            DAMIAN WILLIAMS
            United States Attorney

        By: ____/s/_____
            Sam Adelsberg
            Jason A. Richman
            Assistant United States Attorneys
            (212) 637-2494 / 2589