# KIRTON LAW FIRM

*Marlon G. Kirton, Esq.*

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

April 23, 2022

VIA ELECTRONIC FILING

Honorable Paul G. Gardephe
United States District Judge
Thurgood Marshall
United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *United States v. Alexei Saab, 19 cr. 676 (PGG)*

Dear Judge Gardephe:

      I represent Alexei Saab in the above-referenced matter. I request that this Court ask the remaining jurors additional follow-up questions.

## BACKGROUND

      The Defense filed a motion for a change of venue based on the adverse pretrial publicity generated by this case.[1] The Defense cited 82 news reports of this case, including detailed statements made by Mr. Saab to the FBI.[2] The Court denied the motion.[3] The Court held, "…any venire member who saw and recalls this news coverage…will be identified during voir dire and excused where appropriate."[4]

---

[1] *Docket Nos. 26 and 36.*
[2] *Id.*
[3] *Docket No. 135.*
[4] *Docket No. 135 page 29.*

1

## CASE LAW

The Sixth Amendment affords criminal defendants the right to trial by an impartial jury in the states where the crimes have been committed.[5] However, district courts may transfer proceedings to a different district if extraordinary local prejudice will prevent a fair trial.[6] "Conclusions reached in a case will be induced only by evidence and argument in open court, and not by outside influence, whether of private talk or public print." [7]

In *Skilling*, the named defendant was the former CEO of Houston-based Enron Corporation. Enron was an oil services company that, at one point, was the seventh-largest corporation in the United States. Skilling resigned in august of 2002. Four months later, Enron filed for bankruptcy protection. An investigation ensued. The investigation uncovered widespread fraud among dozens of senior executives. They were accused of committing fraud by artificially inflating the value of the company shares. After the bankruptcy filing, the stock crashed. Thousands of Houston area employees were laid off. Scores of investors lost money, and thousands of former Enron employees lost their retirement savings. Skilling objected to the trial being held in Houston for those reasons and the avalanche of publicity generated by the case. The U.S. Supreme Court held that there was no presumption of prejudice caused by the pretrial publicity and no actual prejudice of the Houston-based jurors. The Court said that "news stories about Enron did not present the kind of vivid, unforgettable information we have recognized as particularly likely to produce prejudice." [8]

In *Rideau*, the defendant robbed a bank in a small Louisiana parish. A bank employee was shot during the robbery, and two others were injured. Rideau was interrogated without counsel and made a full videotaped confession. Excerpts of the confession were broadcast on local television. The U.S. Supreme Court reversed his conviction holding that Part two was denied a fair trial. The Court presumed prejudice from the press coverage of the case and did not examine the voir dire transcript.

In the case at bar, the Defense argued that this case created a presumption of prejudice because it presents evidence of "the kind of vivid, unforgettable information we have recognized as particularly likely to produce prejudice."[9] The Court disagreed.[10]

Presumption of prejudice is just the first part of the *Skilling* court's voir dire analysis. The Supreme Court also reviewed the defendant's voir dire to determine whether actual prejudice infected Skilling's jury.[11] The seating of any juror who should have been dismissed for cause requires reversal.[12] In the *Skilling* case, the Court held that no biased jurors were seated. It is clear from *Skilling* that trial judges are not bound by a juror's oral statement that he (she, they)

---

[5] *Skilling v. United States,* 561 U.S. 358 (2010).
[6] *Id. In re Murchinson,* 349 U.S. 133, 136 (1955). *Rideau v. Louisiana*, 373 U.S. 723 (1963). *Sheppard v. Maxwell*, 384 U.S. 333 (1966).
[7] *Skilling* at 378, citing *Patterson v. Colorado ex rel Attorney General of Colorado* 205 U.S. 454 462 (1907).
[8] I*d* at 384.
[9] *Docket No. 26*, page 18, citing *Skilling at 384.*
[10] *Docket No. 135 page 29.*
[11] *Skilling at 385.*
[12] *Skilling* at 395 citing, *United States v. Martinez-Salazar,* 528 U.S. 304, 316 (2000).

can be fair.[13] Trial Courts are empowered to take several factors into account besides answering a questionnaire and a juror's assertion of impartiality.[14] Trial courts can gauge demeanor, general credibility, answers to the questionnaire, opinions, and sources of information regarding a case.[15]

In the case at bar, this trial Court distributed 113 questionnaires to potential jurors.[16] 63 of those jurors were excused for cause.[17] The Defense is concerned that Mr. Saab may not get a fair trial. However, because the jury is not yet selected, a renewed motion for a change of venue would be premature.

## PROPOSED QUESTIONS

The Defense is concerned about actual prejudice affecting the jury and reserves the right to object to the empaneled jurors. The Defense proposes that the Court ask the remaining venire the following questions:

1. Whether or not you have read, seen, or heard any news accounts of this case? If yes, please detail. The Court should ask follow-up questions after the juror's answer. Can you be fair and impartial to Mr. Saab even though you have read, seen, or heard news accounts of this case?

2. Have you ever visited any of the New York City landmarks referenced in this case? If yes, please detail. The Court should ask follow-up questions after the juror's answer. Even though you visited these New York City landmarks, can you be fair and impartial to Mr. Saab?

3. Do you, a family member, or a friend work at any New York City landmarks referenced in this case? If yes, please detail. The Court should ask follow-up questions after the juror's answer. Can you be fair and impartial to Mr. Saab even though you, a family member, or a friend work at these New York City landmarks?

Please contact me if you have any questions or concerns.

Sincerely,

s/Marlon G. Kirton
Marlon G. Kirton, Esq.


cc: Jason Richman, Assistant United States Attorney (via electronic mail)
    Samuel Adelsberg, Assistant United States Attorney (via electronic mail)
    Jessica Fender, Assistant United States Attorney (via electronic mail)
    Esere Onaodowan, Esq. (via electronic mail)

---

[13] *Skilling* at 394-395.
[14] *Id*, citing *Irvin v. Dowd,* 366 U.S. 717, 723 (1961).
[15] *Id*.
[16] *Trial Transcripts 4/20 and 4/21*.
[17] *Id.*

Alexandra Tseitlin, Esq. (via electronic mail)

4