UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,

                                   **19 cr. 676 (PGG)**


       -against-


ALEXEI SAAB,

           **Defendant.**

--------------------------------------------------------x



### SENTENCING MEMORANDUM PART 1




KIRTON LAW FIRM
Attorney for Defendant
 **ALEXEI SAAB**
175 Fulton Avenue, Suite 305
Hempstead, New York 11550
(516) 833-5617 ph
(516) 833-5620 fax
kirtonlawfirm@gmail.com email
By: Marlon G. Kirton, Esq.
     Matthew Brissenden, Esq.

**I.    The Jury's Verdict of Acquittal with Respect to Count One
Precludes a Finding That the Defendant's Conduct Involved
Or Was Intended to Promote a Federal Crime of Terrorism**

In the Government's April 10th sentencing submission, prosecutors acknowledge that Mr. Saab's offense of conviction – 18 U.S.C. § 2339D – was not a "federal crime of terrorism" at the time of its commission.  Nevertheless, they proffer two alternative rationales for the continued application of U.S.S.G. § 3A1.4.

First, the Government argues that – even though § 2339D was not itself a "federal crime of terrorism" – Mr. Saab nevertheless "intended to promote" *other* federal crimes of terrorism by Hizballah.  Alternatively, the Government argues that the Court can rely upon relevant conduct to find that Saab's conduct "involved" other federal crimes of terrorism for which he was not convicted.

The problem with both of these arguments is that they ignore U.S.S.G. § 1B1.3(c).  The Sentencing Guidelines have changed in a significant way since Mr. Saab's May 2023 sentencing.  Specifically, in 2024, the Sentencing Commission adopted Amendment 826, which added a subsection (c) to § 1B1.3.  That subsection provides:

> **(c) ACQUITTED CONDUCT.—Relevant conduct does not include conduct
> for which the defendant was criminally charged and acquitted in federal court,
> unless such conduct also establishes, in whole or in part, the instant offense of
> conviction.**

The Government's arguments rely upon the assertion that Saab intended to promote additional terrorist activity by Hizbollah.  But these arguments ignore the jury's "not guilty" verdict with respect to Count One: Conspiracy to Provide Material Support or Resources to a Foreign Terrorist Organization.  Through its verdict, the jury expressly found that Mr. Saab did *not agree* to support the mission of Hizballah materially.  For the reasons set forth below, this

Court should decline to adopt a sentencing enhancement that is fundamentally at odds with the jury's verdict of "not guilty" on Count One.

A.    The Jury's Verdict with Respect to Counts One and Three

Mr. Saab Was Convicted of Count Three (Receiving Military-Type Training from a Foreign Terrorist Organization) but acquitted of Count One (Conspiracy to Provide Material Support or Resources to a Foreign Terrorist Organization).  To understand the impact of the jury's verdict upon Saab's sentencing proceeding, it is helpful to look at the respective elements of those offenses.

To convict Mr. Saab under Count Three, the jury was required to find: (1) that Mr. Saab received military-type training from a foreign terrorist organization, that being Hizballah; (2) that Mr. Saab did so knowingly and intentionally; (3) that Mr. Saab did so with knowledge that Hizballah (a) engaged in or engages in terrorist activity, or (b) engaged in or engages in terrorism; and (4) that the jurisdictional element of the offense was satisfied.  *See* Jury Charge, ECF 202, pp. 36-37.

By way of contrast, the jury found that the Government had not met its burden of proof with respect to Count One, the elements of which were as follows: (1) that the conspiracy charged in Count One actually existed – that is, that there was in fact an unlawful agreement between two or more people to provide material support or resources to a foreign terrorist organization – namely, Hizballah; (2) that Mr. Saab knowingly and intentionally joined that conspiracy – that is, that he knowingly and intentionally joined with at least one other person in the agreement to provide material support or resources to Hizballah; (3) that Mr. Saab participated in the conspiracy with knowledge that Hizballah (a) engaged in or engages in terrorist activity, or (b) engaged in or engages in terrorism; and (4) that the jurisdictional element was satisfied.  ECF 202, pp. 30-31.

3

Given the jury's verdict of "guilty" on Count Three, it is evident that they did not acquit Mr. Saab of Count One based upon a lack of knowledge concerning Hizballah's terrorist activities or based upon a lack of jurisdiction. Instead, *the jury found that Mr. Saab did not agree to materially support Hizballah in its activities*. Notably, the definition of "material support" is a broad one. The Government was not required to prove Mr. Saab was a member of Hizbollah. Rather, "material support" can include any property or service. "Service" includes "work performed in coordination with, at the direction of, or for the benefit of a foreign terrorist organization." *Id*. at p. 22. Similarly, a person can conspire to provide material support if he agrees to provide personnel – *i.e.*, if he agrees to "provide[] the organization with himself or one or more individuals to work under the organization's direction or control." *Id*.

Hence, there is a clear and fundamental dichotomy between the count of conviction and the count of acquittal. Count Three required the Government to prove the flow of training and support *from* Hizbollah *to* Saab. Count One, required the converse – an understanding whereby Saab agreed to support Hizbollah. This distinction explains why the latter charge is categorically more serious. In contrast, Count Three carried a maximum sentence of ten years' incarceration, and Count One carried a potential sentence of twenty years.

## II.    In Light of the Jury's Verdict, This Court Should Reject the Government's Assertion That Mr. Saab "Intended to Promote" a Federal Crime of Terrorism

At the outset, the Government contends that § 3A1.4 applies because Mr. Saab, while not convicted of a "federal crime of terrorism," "intended to promote" Hizballah's commission of such offenses. "An offense is 'intended to promote' a federal crime of terrorism when the offense is intended to help bring about, encourage, or contribute to a federal crime of terrorism as that term is defined in 18 U.S.C. § 2332b(g)(5)." *United States v. Awan*, 607 F.3d 306, 314 (2d Cir. 2010).

4

The Government suggests that such a finding is basically preordained by this Court's conclusion, at the previous sentencing, that Saab's conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."  *See* ECF 296 at p. 3, citing 18 U.S.C. § 2332b(g)(5)(A).  Notably, this analysis was conducted before the promulgation of Amendment 826, when there were no restraints on the consideration of acquitted conduct.  As such, that analysis is not binding at this proceeding.

The application of § 3A1.4 under the "intended to promote" prong depends on *Saab's intent*, not the institutional aims of Hizballah generally.  It goes without saying that a person could receive military training from a terrorist organization without intending to promote the terrorist activities of that organization.  A black-and-white example might involve a member of a domestic militia group who travels overseas to obtain training from a foreign organization to which they pledge no allegiance.  To the extent that such a defendant is merely obtaining military training without promoting the aims of the terrorist organization, U.S.S.G. § 3A1.4 would not apply.

That is precisely what the jury found in this case.  Obviously, the jury accepted evidence that Mr. Saab knowingly met with representatives of Hizballah and received military training.  But it simultaneously *rejected* the allegation that Saab's coordinated activities with Hizballah evidenced an agreement to provide material support to that organization.  Because Mr. Saab was acquitted of conspiracy – an inchoate offense which required neither a completed offense nor even an overt act – the jury's acquittal signifies a finding as to Saab's lack of *mens rea*.  Given the broad definition of "material support," this means the jury found that Saab did *not* agree to "work under the organization's direction or control" and did not agree to perform work "in coordination with, at the direction of, or for the benefit of" Hizballah.  And if Saab's training was not "for the benefit

of" Hizballah, it cannot be the case that it was "intended to promote" acts of terrorism by that organization.

The Government argues there is extensive trial evidence to show that Saab intended to further Hizballah's terrorism by conducting surveillance upon Israeli troops, planting an IED, participating in an assassination attempt, and surveilling targets abroad.  ECF 296 at p. 4.  But if the jury had found that Saab committed any of these acts at Hizbollah's direction, it would have been bound to convict him under Count One.  Instead, it acquitted him of that count.  Because this acquitted conduct is distinct from Mr. Saab's offense of conviction – *i.e.*, his receipt of military training – it should not be used to enhance his sentence under U.S.S.G. § 1B1.3(c).

In short, the jury found that Mr. Saab, while receiving training, *did not* enter an agreement to advance or promote Hizballah's aims.  While prosecutors may disagree with the jury's judgment in this regard, its verdict should nevertheless control any discussion about the scope of Mr. Saab's conduct and the intent which may be imputed to him at resentencing.  Given the jury's verdict, this Court should decline to enhance Saab's sentence based upon a contrary finding that he "intended to promote" Hizballah's commission of a federal crime of terrorism.

### III.   In Light of the Jury's Verdict, This Court Should Reject the Government's Assertion That Mr. Saab's Offense "Involved" a Federal Crime of Terrorism

"A defendant's offense 'involves' a federal crime of terrorism when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5), or his relevant conduct includes such a crime." *United States v. Awan*, 607 F.3d 306, 313-14 (2d Cir. 2010).  At the Government concedes, 18 U.S.C. § 2339D is not in and of itself a federal crime of terrorism.  However, the Government claims the Court can look to the record to find criminal conduct that: (1) was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government

conduct; and (b) was an enumerated offense under 18 U.S.C. § 2332b(g)(5)(B). Again, the Government cites to evidence purportedly showing that Saab worked as a "sleeper cell operative" for Hizbollah, planned terrorist attacks for that organization, provided "actionable intelligence to Hizballah during trips to Lebanon," and participated in two violent attacks in Lebanon at the direction and behest of his Hizballah handlers. ECF 296 at p. 5. But again, if the jury had found *any* of these things, it would have necessarily convicted Saab under Count One. It did not. Because this alleged conduct is distinct from Mr. Saab's offense of conviction, and because he was acquitted of such conduct, it should not be used to increase his Guidelines sentencing range.

D.     Amended Guidelines Calculation

At the time of Mr. Saab's original sentencing, the Court adopted Probation's Guidelines calculation under U.S.S.G. § 2M5.3, which was as follows:

| | |
|---|---|
| Base Offense Level Under § 2M5.3(a) | 26 |
| Material Support Enhancement Under § 2M5.3(b) | +2 |
| Terrorism Adjustment Under § 3A1.4 | +12 |
| Adjusted Offense Level | 40 |

For the reasons set forth above, this Court should decline to apply U.S.S.G. § 3A1.4. Moreover, for the same reasons, it should also decline to apply the two-level enhancement at U.S.S.G. § 2M5.3(b). That enhancement applies:

**(1) If the offense involved the provision of (A) dangerous weapons; (B) firearms; (C) explosives; (D) funds with the intent, knowledge, or reason to believe such funds would be used to purchase any of the items described in subdivisions (A) through (C); or (E) funds or other material support or resources with the intent, knowledge, or reason to believe they are to be used to commit or assist in the commission of a violent act, increase by 2 levels**.

Obviously, Mr. Saab is not alleged to have provided Hizbollah with weapons, firearms, explosives, or funds. At the original sentence, this enhancement was held applicable based on a

7

finding that Mr. Saab provided material support to Hizbollah with the intent and knowledge that such support would be used to assist in the commission of a violent act. *See* ECF 286, p. 17. But in the wake of Amendment 826, we respectfully submit that such a finding would be inconsistent with the jury's verdict of acquittal on Count One.

Indeed, Application Note 1 to § 2M5.3 expressly defines the phrase "material support" by reference to 18 U.S.C. § 2339(B). Because the jury found that Saab did not conspire to provide Hizbollah with material support under § 2339(B), this two-level enhancement should not apply.

Accordingly, Mr. Saab's Adjusted Offense Level under § 2M5.3 should be equal to the base offense level of 26. Because that offense level is 15 levels higher than the Adjusted Offense Level applicable to Counts Six and Nine, no additional units are assigned under U.S.S.G. § 3D1.4.

This means that Mr. Saab's Total Offense Level should be reduced from 40 to 26, and his Criminal History Computation should be reduced from Category VI to Category I. A Total Offense Level of 26 and a Criminal History of Category I yields an advisory sentencing range of 63 to 78 months' imprisonment.

## CONCLUSION

Mr. Saab requests that this Court reject the terrorism enhancement. The defense will submit a traditional sentencing memorandum discussing all matters related to 18 USC 3553 (a) at a date and time agreed upon by the parties and this Court.

Sincerely,

*Marlon Kirton*
Marlon G. Kirton, Esq.
Matthew Brissenden, Esq.


cc: Jason Richman, Assistant United States Attorney (via electronic filing)
    Samuel Adelsberg, Assistant United States Attorney (via electronic filing)
    Matthew Brissenden, Esq. (via electronic filing)

8