

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

June 22, 2026

<u>VIA CM/ECF</u>

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   **Re:**  ***United States v. Alexei Saab*, 19 Cr. 676 (PGG)**

Dear Judge Gardephe:

   The Government respectfully writes in advance of the July 10, 2026 resentencing in this matter and in brief response to the defendant's May 14, 2026 (Dkt. 303) and June 15, 2026 (Dkt. 306) sentencing submissions.

## I.  The Terrorism Enhancement Applies

   As set forth in the Government's April 10, 2026 submission, Section 3A1.4 (the "Terrorism Enhancement") of the United States Sentencing Guidelines (the "Guidelines") applies to the defendant's conviction on Count Three. (Dkt. 296). The Terrorism Enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4. The Application Notes explain that a "federal crime of terrorism" for purposes of the Guideline "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." U.S.S.G. § 3A1.4 cmt. n. 1. In turn, Section 2332b(g)(5) explains that a "[f]ederal crime of terrorism" is an offense that is (1) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," and (2) one of the crimes listed in 18 U.S.C. § 2332b(g)(5)(B)(i). *United States v. Saab*, 164 F.4th 198, 215 (2026). As detailed in the Government's April 10, 2026 submission, the Terrorism Enhancement applies to the defendant's conviction under either prong—that is, if the offense is either a felony that "involved" *or* "was intended to promote" a federal crime of terrorism. (Dkt. 296).

   In response, the defendant argues that his acquittal on Count One—for conspiring to provide material support to Hizballah—necessarily precludes application of the Terrorism Enhancement because of recently-enacted Section 1B1.3(c) of the Guidelines, which prohibits consideration of "conduct for which the defendant was criminally charged and acquitted in federal court" as relevant conduct. U.S.S.G. § 1B1.3(c). The defendant is wrong. *First*, Section 1B1.3(c) does not preclude consideration of acquitted conduct if it "also establishes, in whole or in part, the instant offense of conviction." *Id.* In this case, the conduct supporting application of the Terrorism Enhancement—even if it were assumed to otherwise be "acquitted conduct" owing to the jury's verdict on Count One—also "establishes, in whole or in part, the instant offense of conviction" on

Count Three.  *Id.*  This includes, for example, (a) that the defendant gathered intelligence to identify the most vulnerable points of attack at various landmarks and critical infrastructure in New York City and elsewhere; (b) that the defendant provided surveillance photographs and detailed notes to Hizballah concerning these landmarks and infrastructure to maximize damage and destruction in any future attack; and (c) that the defendant underwent weeks of explosives training.  All of this conduct suffices to establish that the defendant's conviction on Count Three "involved" or was "intended to promote" a "federal crime of terrorism" and continues to support imposition of the Terrorism Enhancement.

*Second*, the defendant does not point to any specific "conduct" that he argues should not be considered by the Court owing to Section 1B1.3(c)—but, rather, argues that the Court is precluded from making certain inferences or conclusions about the defendant's intent based on his acquittal on Count One.  This is an overreading of Section 1B1.3(c).  The defendant does not, for example, identify specific examples of the government's proof at trial that are now "acquitted conduct" and thus cannot now be considered under Section 1B1.3(c).  Instead, he broadly argues as an (incorrect) legal matter that the acquittal on Count One precludes the inferences the Court drew from the record in support of the enhancement.  For this reason, standing alone, the Court should reject the defendant's argument.

*Third*, the defendant's argument also fails because he incorrectly contends that the jury's verdict (1) necessarily means that "Mr. Saab did *not agree* to support the mission of Hizballah materially," (2) "signifies a finding as to Saab's lack of *mens rea*," and (3) that he therefore could not have "intended to promote" a federal crime of terrorism. (Dkt. 303 at 2-5).  Even assuming *arguendo* that these conclusions would render the Terrorism Enhancement inapplicable, the defendant is incorrect about the import of the jury's verdict on Count One and his argument is in tension with the well-established principle that "[i]t is inappropriate for a sentencing court to speculatively conclude that the jury found or rejected a certain fact based on its verdict of acquittal." *United States v. Martinez*, 110 F.4th 160, 175 (2d Cir. 2024).  For example, the jury may have determined that there was no conspiracy at all:  the defendant intended to support Hizballah when he performed years of surveillance activity and passed his notes and pre-operational planning back to his handling agents, but that the Government had failed to adequately prove that there was another member of the conspiracy or an illegal agreement or understanding, as was required under Count One but not Count Three. (Dkt. 202 at 30-31).  Or the jury may have concluded that the defendant did everything alleged, but that what he intended to provide to Hizballah—and did provide to Hizballah—did not suffice as "material support or resources" as defined by the Court. (*Id.* at 21).  Put simply, there are myriad possible explanations for the jury's verdict that diverge from the defendant's assertions on this score, and the Court can also reject the defendant's argument on this basis.

*Fourth*, even if the jury's verdict could only mean that the defendant did not intend to support Hizballah, that *still* does not mean that he did not intend to promote a *different* federal crime of terrorism; including, for example, a violation of 18 U.S.C. § 2332b ("Acts of terrorism transcending national boundaries") or 18 U.S.C. § 2332f ("Bombings of places of public use, government facilities, public transportation systems and infrastructure facilities").   The defendant could have "intended to promote" either of these offenses based on the conduct underlying his conviction on Count Three, even if his conviction on Count One somehow meant that he "did not agree to support the mission of Hizballah materially." (Dkt. 303 at 2).  This, too, provides a basis to again impose the Terrorism Enhancement at re-sentencing.

*Finally*, even if the defendant had pointed to specific conduct that could no longer be considered at the re-sentencing; even if that conduct did *not* also establish in whole or in part the count of conviction; and even if, without that conduct, the Court would be unable to conclude by a preponderance of the evidence that the defendant "intended to promote" a federal crime of terrorism, including 18 U.S.C. §§ 2332b and 2332f, the defendant's conclusion *still* does not follow. The Terrorism Enhancement also applies if a conviction or relevant conduct "involve[d]" a federal crime of terrorism, even absent proof that such conduct was "intended to promote" such an offense. As detailed by Judge Sullivan in his dissent in this case, the defendant's conduct included "several other" federal crimes of terrorism enumerated at the time of the offense. *Saab*, 164 F.4th at 220-22. And the conduct supporting this conclusion remains in fair consideration, as it established, in whole or in part, the defendant's conviction on Count Three. By way of just one example, the defendant's surveillance activity in the United States was in part the basis of his conviction on Count Three. *See id.* at 215 (majority noting that the defendant's surveillance activity in the United States "created a foreseeable risk of death or serious bodily injury" in support of his conviction on Count Three). This conduct "involved" violations of 18 U.S.C. § 2332b (prohibiting "acts of terrorism transcending national boundaries") and § 2332f (bombing of public places and facilities), among other offenses, providing yet another basis to reject the defendant's argument at resentencing.

## II.    The Defendant's June 15, 2026 Submission

The defendant's June 15, 2026 submission attaches a mitigation report, a series of letters from friends and family, and documents concerning the defendant's conduct while incarcerated. (Dkt. 306).[1] The defendant argues for "the minimum statutory sentence" and requests that he be allowed to serve his sentence at LSCI Allenwood. (Dkt. 306).[2]

Section 2339D establishes that an individual convicted under the statute "shall be fined under this title or imprisoned for ten years, or both." 18 U.S.C. § 2339D. Consistent with the Court's prior sentence, the plain language of the statute, and every sentence that the Government is aware of for a Section 2339D conviction, the Court should re-impose a sentence of ten years' imprisonment. *See, e.g.*, *United States v. Saab*, 19 Cr. 676 (PGG), 2021 WL 5868157, at *19 (S.D.N.Y. Dec. 10, 2021) (noting that the defendant faced a "mandatory minimum sentence of ten years' imprisonment" in denying his request for bail); *United States v. Kourani*, 17 Cr. 417 (AKH), Dkt. 141 (S.D.N.Y. Dec. 18, 2019) (judgment showing 10-year sentence on Section 2339D conviction); *United States v. Doe*, 323 F. Supp. 3d 368, 383 (E.D.N.Y. 2018) ("A charge of receiving military-type training from a foreign terrorist organization has a mandatory prison term

---

[1] One of the defendant's letters is from his brother, Bassem Saab. (Dkt. 306, Appendix F). Bassem Saab was a fellow Hizballah member who planted an improvised explosive device ("IED") with the defendant on one of his Hizballah missions. (*See, e.g.*, Tr. 189 ("[The defendant] described, along with his brother, Bassem Saab, planting an IED near his hometown of Yaroun that targeted [an] Israeli convoy.").

[2] The Government takes no position on the defendant's request to serve the remainder of his sentence at a particular facility.

of ten years. 18 U.S.C. § 2339D.").[3]

### III.    Conclusion

For the foregoing reasons, the Court should (a) apply the Terrorism Enhancement in calculating the appropriate Guidelines range for the defendant's conviction on Count Three, and (b) re-impose a sentence of 10 years' imprisonment on Count Three.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:  ___/s/_____
Sam Adelsberg
Jason A. Richman
Assistant United States Attorneys
(212) 637-2494 / 2589

cc:    Defense Counsel       (by ECF)

---

[3] As before, the Court should order the sentence on Count Three consecutive to the previously imposed sentences on Counts Six and Nine. *See Garrett v. United States*, 471 U.S. 773, 793 (1985) ("The presumption when Congress creates . . . distinct offenses is that it intends to permit cumulative sentences."); U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment" to be imposed for all counts of conviction, "then the sentence imposed on one or more of the other counts shall run consecutively."); *United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001) ("If this 'total punishment' exceeds the highest statutory maximum on any count, the Guidelines require that the sentences run consecutively, to the extent necessary to achieve the 'total punishment.'").